Walter DYCHE, Individually, and as Representative of the Citizens, Residents and Taxpayers of the City of London, Kentucky, Appellant,

v.

CITY OF LONDON, Kentucky, Appellee.

Court of Appeals of Kentucky.

March 23, 1956.

Franklin P. Hays, Skaggs, Hays & Fahey, Louisville, for appellant.

J. Milton Luker, London, for appellee.

CAMMACK, Judge.

This is an appeal from a declaratory judgment which upheld the validity of a voted bond issue of the City of London, a fourth class city. The proceeds of the bonds, if approved, will be used to finance the construction of an industrial building which will be leased to private industry. The purpose of the plan is to attract new industry to the area and thereby reduce unemployment, which, according to the evidence, has reached an abnormal point.

In November, 1955, the voters of the City overwhelmingly approved the issuance of bonds for this purpose. The percentage of affirmative votes was well beyond the two-thirds majority required by Section 157 of the Kentucky Constitution for the creation of any indebtedness exceeding the revenue and income provided for any given year. The City complied strictly with the statutory procedural requirements for the issuance of general obligation bonds, and it is undisputed that the constitutional limitations on the municipality's indebtedness will not be exceeded by this additional debt.

The question on this appeal is whether the Legislature has authorized municipalities to issue general obligation bonds to finance a project of this type. The appellants contend that (1) the project does not pursue a public purpose; (2) a lease of the proposed building to a private corporation would amount to a loaning of the City's credit to the corporation, in violation of Section 179 of the Kentucky Constitution; and (3) any lease would be a franchise and thus subject to the twenty year limitation imposed by Section 164 of the Constitution.

Section 156 of our Constitution provides that the powers of municipalities "shall be defined and provided for by general laws". Municipal power to create indebtedness is not specifically granted by the Constitution, although it is recognized in the provisions

establishing maximum limitations on indebtedness, and other pertinent sections. Hence, Section 157 provides that:

"* * * No county, city, town, taxing district, or other municipality, shall be authorized or permitted to become indebted, in any manner or for any purpose, to an amount exceeding, in any year, the income and revenue provided for such year, without the assent of two-thirds of the voters thereof, * * *."

The Legislature, in KRS, Chapter 66, has authorized local governmental units to incur indebtedness and issue general obligation bonds. KRS 66.070(1) provides:

"If, in any year, the legislative body of any city of the fourth, fifth or sixth class deems it necessary to incur any indebtedness that cannot be paid without exceeding the income and revenue provided for the city for that year, it shall give notice of an election by the voters of the city to determine whether the indebtedness shall be incurred. * * *"

The only express prerequisite for incurring a debt is that the city legislative body must deem the indebtedness to be "necessary." However, subsection 2 of the statute provides:

"If two-thirds of the votes cast on the question are in favor of incurring the indebtedness, the city legislative body shall by ordinance provide for the mode of creating and paying the indebtedness. The ordinance shall provide for the levy and collection of an annual tax upon all taxable property within the city, sufficient to pay the interest on the indebtedness and create a sinking fund for the payment of the principal within a period of not more than forty years from the time of incurring the indebtedness. The annual tax shall be levied at the same time as other taxes, and shall be in addition to all other taxes. The proceeds of the tax, when collected, shall be kept in the city treasury as a separate fund, to be inviolably appropriated to the payment of the principal and interest of the indebtedness."

■ It is clear that the power to incur indebtedness is defined by the power to levy taxes through which the indebtedness can be retired. While subsection 2 does not state an express criterion for a bonded debt, it is implicit that the tax must comply with the criterion which the Constitution itself imposes upon the State's power to tax. Section 171 of the Constitution provides that taxes shall be levied for "public purposes" only. Under Section 181, the Legislature is authorized to confer the power to tax on local governmental units, but in no case can the Legislature confer a power greater than that which it possesses under the Constitution. Hence, under the taxing power which the Legislature has conferred on local governmental units under Chapter 66, the City is restricted by the "public purpose" criterion imposed by the Constitution. It follows that the bonded debt can be created only for a "public purpose."

In passing, we note that the requirement of Section 178 of the Constitution that any law authorizing the borrowing of money shall specify the purpose for which the money is to be used has been fulfilled.

■■ According to the record, the proposed industrial building represents an effort to attract new industry to the area and thereby reduce the presently existing abnormal unemployment conditions in the City. The validity of a project of this type, which closely approaches public aid to private industrial interests, depends entirely upon the existence of underlying economic conditions which render the project essentially one of a "public" nature. We think the City must establish with clear and convincing proof that such conditions exist. Since the record reveals that widespread unemployment exists in the City and its surrounding area, and shows that many citizens are in dire need of employment which they are more likely to obtain if new industry can be attracted to the area, we think the burden of proof imposed upon the City has been met.

■ Whether the relief of unemployment properly may be the object of municipal borrowing power, heretofore adjudged to have been delegated for "public purposes," has not been decided previously by this Court, insofar as we have been able to ascertain. However, this Court has held that the care of the indigent poor, closely related to the relief of unemployment, is a "public purpose" for which the taxing power may be exercised. Hager v. Kentucky Children's Home Society, 119 Ky. 235, 83 S.W. 605, 67 L.R.A. 815. And in Faulconer v. City of Danville, 313 Ky. 468, 232 S.W. 2d 80, we held that the acquisition and ownership by a city of an "industrial building" was a "public project" within the purview of KRS, Chapter 58, authorizing the issuance of revenue bonds. The question of the municipality's authority to exert its taxing power or appropriate tax funds for acquiring an industrial plant was reserved specifically.

Other courts have upheld the use of tax funds for the relief of unemployment as an expenditure for a public purpose. In Albritton v. City of Winona, 181 Miss. 75, 178 So. 799, 804, 115 A.L.R. 1436, the Supreme Court of Mississippi ruled that public tax funds could be used to pay bonds issued to finance the construction of municipal industrial buildings. The authority to issue bonds for that purpose had been given the municipalities by the Legislature in order to reduce widespread unemployment in the State. In upholding the validity of the statute, the Court said:

" * * * The care of the poor, the relief of unemployment, and the promotion of agriculture and industry are undoubtedly proper governmental purposes, are so recognized everywhere and by all."

The Albritton case was used as authority by the Supreme Court of Louisiana in Miller v. Police Jury of Washington Parish, 226 La. 8, 74 So.2d 394, in upholding a constitutional amendment permitting municipalities to incur indebtedness to encourage the establishment of industrial enterprises. The Court held that the amendment did not authorize taxation for private purposes so as to constitute a "taking" without due process of law.

In Carmichael v. Southern Coal & Coke Co., 301 U.S. 495, 57 S.Ct. 868, 875, 81 L.Ed. 1245, the United States Supreme Court, noting that under the Fourteenth Amendment the state taxing power can be exerted only for public purposes, held that relief of unemployment is a proper object for the expenditure of public funds. The Court observed:

"The evils of the attendant social and economic wastage permeate the entire social structure. Apart from poverty, or a less extreme impairment of the savings which afford the chief protection to the working class against old age and the hazards of illness, a matter of inestimable consequence to society as a whole, and apart from the loss of purchasing power, the legislature could have concluded that unemployment brings in its wake increase in vagrancy and crimes against property, reduction in the number of marriages, deterioration of family life, decline in the birth rate, increase in illegitimate births, impairment of the health of the unemployed and their families and malnutrition of their children." (Footnotes omitted.)

■ From the foregoing authorities, we think it is clear that the relief of unemployment is a "public purpose" within the purview of the taxing power. Therefore, under KRS, Chapter 66, a city of the fourth class, whose legislative body deems it necessary, may incur an indebtedness for the purpose of constructing an industrial building, in an effort to attract new industry and thereby reduce abnormal unemployment in the municipality.

It follows from our foregoing discussion that a lease of the proposed industrial building would not be a loaning of the City's credit to a private corporation, in violation of Section 179 of the Kentucky Constitution.

The appellant's third contention that Section 164 of the Kentucky Constitution would be violated by a lease for more than 20 years presents an issue concerning which there is no presently existing controversy. Hence, we deem it unnecessary to decide that question.

The judgment is affirmed.