John DANNHEISER d/b/a Dannlin
Development Company,
Appellant,

v.

CITY OF HENDERSON, Appellee.

No. 98–SC–0474–DG.

Supreme Court of Kentucky.

Sept. 23, 1999.

Christopher M. Hill, Linda J. West, McBrayer, McGinnis, Leslie and Kirkland, Frankfort, for Appellant.

Jerrold R. Perchik, Thomas E. Powell, II, Greenbaum Doll & McDonald PLLC, Louisville, for Appellee.

Robin Fields Kinney, General Counsel, Frankfort, for Amicus Curiae Cabinet for Economic Development.

WINTERSHEIMER, Justice.

This appeal is from a decision of the Court of Appeals which affirmed an order of the circuit court granting summary judgment to the City of Henderson in which it was argued that Section 3 and Section 179 of the Kentucky Constitution was violated by the sale of municipal property to private companies. Dannheiser also challenges the public purpose and the authority of the City to enter into the business of industrial development.

The specific issues raised by Dannheiser are whether Sections 3 and 179 of the Kentucky Constitution prohibit the sale of municipal property to private companies for less than fair market value; whether a city can determine that the enhancement of economic development by promoting employment is a valid public purpose and whether KRS 82.082 prohibits a City from entering into the business of industrial development on an individual basis.

This dispute presents a significant state constitutional question and further addresses the scope of the Home Rule authority of a city, as well as the power of a city, to determine what is a public purpose.

Beginning in 1985, Dannheiser developed two Henderson County Industrial Parks, which he had planned to sell in lots, having an estimated fair market value of $15,000 per acre. In 1990, the City of Henderson purchased the 580–acre Hoge farm for $1,500 per acre, a portion of

which was to be developed for heavy industrial use, using city tax revenue to add streets and to install utilities. Without utilizing the Local Industrial Development Authority Act codified at KRS 154.50–301 to 154.50–346, the City marketed the Henderson Corporate Park with parcels selling for as little as its original purchase price of $1,500 per acre.

Dannheiser responded with a lawsuit in circuit court seeking damages as well as a declaratory judgment and injunctive relief against the City, arguing that the City in developing the corporate park had violated Sections 3 and 179 of the Constitution, plus the Home Rule provisions of KRS 82.082. The circuit judge entered a two-page summary judgment which denied the motion by Dannheiser and granted the motion for summary judgment of the City. The circuit judge reasoned that "benefits accruing to private industrial companies locating in the Henderson Corporate Park are granted for a valid public purpose and, therefore, do not constitute a separate emolument and privilege ..."

The circuit judge also determined summarily that the development and marketing of the Henderson Corporate Park and sale of tracts therein does not violate Section 179 of the Constitution because the actions were taken for a valid public purpose. The circuit judge also concluded that the City had not exceeded its authority under the Home Rule statutes because KRS 154.50–301 to 154.50–346 provided a permissive method of industrial development rather than a comprehensive legislative system. Dannheiser appealed to the Court of Appeals which affirmed the decision of the circuit court in a divided vote. The majority opinion asserted that the Local Development Authority Act did not qualify as a comprehensive system of legislation on the same general subject because KRS 154.50–316(1) provided that any governmental unit by act of its legislative body may establish a nonprofit industrial authority. The Court of Appeals also affirmed the public purpose aspects of the

circuit court decision. Upon a motion by Dannheiser, this Court granted discretionary review.

The first argument presented by Dannheiser is that Sections 3 and 179 of the Kentucky Constitution forbids the sale of municipal property to private companies for anything less than fair market value. Section 179 provides in pertinent part that:

> The General Assembly shall not authorize any county or subdivision thereof, city, town or incorporated district, to become a stockholder in any company, association or corporation, or to obtain or appropriate money for, or to loan its credit to, any corporation, association or individual, except for the purpose of constructing or maintaining bridges, turnpike roads, or gravel roads: provided, if any municipal corporation shall offer to the Commonwealth any property or money for locating or building a Capitol, and the Commonwealth accepts such offer, the corporation may comply with the offer.

Section 3 provides:

> All men, when they form a social compact, are equal; and no grant of exclusive, separate public emoluments or privileges shall be made to any man or set of men, except in consideration of public services ...

Similar limitations are placed on state government by means of Section 177 of the Constitution which provides that "the credit of the Commonwealth shall not be given, pledged or loaned to any individual, company, corporation or association, municipality, or political subdivision of the State; nor shall the Commonwealth become an owner or stockholder in, nor make donation to any company, association or corporation; nor shall the Commonwealth construct a railroad or other highway." As noted in *Valla v. Preston Street Road Water District No. 1*, Ky., 395 S.W.2d 772 (1965), Section 177 is analogous to Section 179. It is apparent that Section 179 was enacted in order to place on local government the same general restrictions im-

posed on the state by Section 177. *Cf. City of Louisville Municipal Housing Comm. v. Public Housing Administration,* Ky., 261 S.W.2d 286 (1953).

Dannheiser claims that the City has violated Section 179 by developing the industrial park and then selling parcels of the park for amounts he believes are below fair market value. The City responds that the development and marketing of the park were constitutionally proper because such actions serve a public purpose.

█ The leading case involving somewhat similar facts as they relate to state government is *Hayes v. State Property and Buildings Comm.,* Ky., 731 S.W.2d 797 (1987). *Hayes, supra,* raised a question of whether an incentive package offered by the General Assembly to entice Toyota Motor Company to build a manufacturing plant in Scott County was constitutional. *Hayes* stated that as long as the expenditure of public money has, as its purpose, the effectuation of a valid public purpose, Section 177 is not offended even in situations where the conveyance of publicly financed property to a private business occurs without consideration. Applying the *Hayes* doctrine, we must conclude that the actions by the City in this case did not violate either Section 177 or Section 179 so long as they were undertaken for a valid public purpose.

Kentucky courts have consistently approved such undertakings as legitimate public purposes as long as they are for the promotion of economic welfare, relief of unemployment and stimulation of industry. *Cf. Stovall v. Eastern Baptist Institute,* Ky., 375 S.W.2d 273 (1964). *See also, Industrial Development Authority v. Eastern Kentucky Regional Planning Comm.,* Ky., 332 S.W.2d 274 (1960), which holds that fostering industrial development to alleviate unemployment is a public purpose. *Stovall, supra,* also holds that a public purpose exists if the end to be achieved bears a reasonable relation to the public interest or welfare and is within the scope of legitimate government activity.

█ Although Section 3 and Section 179 could prohibit an outright gift or lending of credit, these sections do not prevent all public incentives when offered in furtherance of a valid public service, such as the economic development efforts in this case. *See Industrial Development Authority, supra.*

Consequently, we must conclude that the Court of Appeals and the trial court correctly held that the development and marketing of the industrial park by the City of Henderson was a valid public purpose because its stated purpose was to enhance economic development in the area.

█ Dannheiser also contends that economic development and the relief of unemployment are public purposes only if the project is determined to have state-wide benefits. We disagree. He relies on *Industrial Development Authority* which involves the establishment of a state-wide industrial authority empowered to grant financial assistance to local development agencies. In upholding the constitutionality of the authority, the court noted the benefits the entire state would receive from the establishment of such a state-wide agency. However, the court also recognized two cases in which it approved of the creation of industrial projects by local governments which arguably would not have the same state-wide benefits as the state-wide industrial authority. *See Dyche v. City of London,* Ky., 288 S.W.2d 648 (1956), and *Faulconer v. City of Danville,* 313 Ky. 468, 232 S.W.2d 80 (1950). We agree with the Court of Appeals that the *Industrial Development Authority* case does not hold that a state-wide benefit is a requirement for an industrial project to be constitutionally valid.

## II. *Public Purpose*

In Kentucky, the General Assembly and the courts have developed a broad definition of activities that may qualify as a public purpose. *Valla, supra. See City of*

*Owensboro v. McCormick*, Ky., 581 S.W.2d 3 (1979), recognized that the definition of public purpose by a court can be expansive in a given situation. Other municipal text writers have correctly stated that "public purpose" should be broadly construed to comport with the changing conditions of modern life. Eugene McQuillen, *The Law of Municipal Corporations*, § 39.19.

Various other states have developed an expansive definition of the type of conduct that will constitute a public purpose. Examples may be found in *Opinion of Justices*, 112 N.H. 42, 288 A.2d 697 (1972); *Duckworth v. City of Kansas City*, 243 Kan. 386, 758 P.2d 201 (1988); *Burkhardt v. City of Enid*, 771 P.2d 608 (Okla.1989); *Carruthers v. Port of Astoria*, 249 Or. 329, 438 P.2d 725 (1968); *Clem v.. City of Yankton*, 83 S.D. 386, 160 N.W.2d 125 (1968); *Linscott v. Orange County Industrial Development Authority*, 443 So.2d 97 (Fla.1983). *In re Opinion of Justices*, 177 A.2d 205 (Del.1962); *Roan v. Connecticut Industrial Building Comm.*, 150 Conn. 333, 189 A.2d 399 (1963); *Wilson v. Connecticut Product Development Corp.*, 167 Conn. 111, 355 A.2d 72 (1974); *Chase v. County of Douglas*, 195 Neb. 838, 241 N.W.2d 334 (1976).

Kentucky has repeatedly recognized that economic development is a valid public purpose. *See Norman, State Auditor, v. Kentucky Bd. of Managers of World's Columbian Exposition*, 93 Ky. 537, 20 S.W. 901 (1892); *Hager v. Kentucky Children's Home Society*, 119 Ky. 235, 83 S.W. 605 (1904); *Butler v. United Cerebral Palsy of Northern Ky., Inc.*, Ky., 352 S.W.2d 203 (1961).

The most recent Kentucky authority in this long line of decisions applying the public policy exception is *Hayes v. State Property and Buildings Comm., supra. Hayes* followed the public purpose exceptions to the restrictions of Sections 177 previously established in several cases and determined that the Act of the General Assembly was constitutionally sound because of its underlying public purpose.

*Hayes* cited *Industrial Development Authority* and *Kentucky Live Stock Breeders' Assn. v. Hager*, 120 Ky. 125, 85 S.W. 738 (1905), as well as *Dyche, supra*, which held that relief of unemployment was a public purpose pursuant to an analysis of Section 179.

The public purpose that provided constitutional validity in the *Hayes* case is identical to the public purpose in the City of Henderson case. The only difference is that the *Hayes* case applied to a very large project that had obvious state-wide implication, the Henderson case applies to local activities. The City's sole purpose in developing the corporate park was to foster economic development by attempting to retain existing industry as well as to attract new industry to its local community. The incidental benefits provided to private industry are permissible under Kentucky law as noted in *Industrial Development Authority* and *Hayes*.

■ Dannheiser argues that pursuant to the holding of *Dyche*, the City must prove by clear and convincing evidence that unemployment is a widespread problem in the vicinity in order to come within the exception for public purpose. We find such an argument to be unconvincing. *Dyche* actually held that unemployment is only one factor in the analysis of public purpose. That case recognized that a city must establish that the underlying economic conditions exist in order to develop the project. Reliance by Dannheiser on his theory of *Dyche* is misplaced and without merit.

■ Kentucky precedent shows that the City must only prove that the development bears a reasonable or sufficient relationship to the purpose of economic growth as long as there is a sufficient relation to the accomplishment of a legitimate public purpose, there is no necessity for the courts to interfere with the determination of public purpose. *Stovall, supra.* The question of high unemployment should not be the sole basis for action by a legislative body and it

need not be established pursuant to the clear and convincing evidence standard.

Here, the efforts of the City in developing and selling the development park are directly related to the pursuit of economic growth in the Henderson area. The City is required to establish that its actions are reasonably expected to further a recognized public purpose. A valid public purpose exists even if the economic development activities in question promote only local economic development. The economic benefits resulting from the project do not have a direct state-wide impact. The development projects which are the subject of *Dyche* and *Faulconer* were very local as distinguished from state-wide. *Industrial Development Authority* does not require that the economic development project have state-wide impact in order to qualify for the public purpose exception provided by the Constitution. As noted in *Hayes,* any time new industry is brought into Kentucky or existing industry is persuaded to stay in Kentucky, the entire state benefits although indirectly.

Dannheiser complains that because the City did not use the Economic Development Act to develop the area, that the activities cannot be for a public purpose. We disagree.

■ The City was not prevented from undertaking local economic development simply because it decided not to proceed through the local industrial investment authority. The act is permissive and not mandatory, and consequently, the City is allowed to act independent of its provisions. Reliance by Dannheiser on the *City of Henderson v. Todd,* Ky., 314 S.W.2d 948 (1958), is unpersuasive. In that case, the city used a bond-financing program for economic development that was specifically limited to the financing of public projects. That case did not discuss the constitutional and statutory sections involved here and is inapplicable to this case. The Dannheiser theory is clearly contrary to the general purposes as demonstrated by the Home Rule statutes.

■ The claim by Dannheiser that the City is improperly engaging in private ventures is without merit. Kentucky case precedent has continually recognized the distinction between legitimate private development activities and those that are guided by a public purpose. The conduct of the City falls within the public purpose area. A city may engage in economic development through a number of state programs which involve the development of real estate. *See* KRS 154.12 et seq., KRS 42.4588; KRS 154.20. Legislative bodies are given the authority to determine public policy under our constitutional system. *Commonwealth, ex rel Cowan v. Wilkinson,* Ky., 828 S.W.2d 610 (1992). The determination by the City as to a valid public purpose is conclusive so long as the purpose to be achieved has a reasonable relationship to the public interest.

Sections 27 and 28 of the Kentucky Constitution provide for a separation of powers so as to require that each branch of government have separate duties and powers in order to maintain a balance of government. *Commonwealth, Cabinet for Human Resources v. Kanter,* Ky.App., 898 S.W.2d 508 (1995). The determination of what is a public purpose is primarily a matter for legislative discretion which will not be disturbed by the courts so long as it has a reasonable basis. *See Hayes, supra.* There is a well established body of law that duly adopted legislation is entitled to a presumption of validity and we have no difficulty in extending that general principle to municipalities. Naturally, such a presumption is capable of being challenged under proper circumstances.

*Hayes* teaches that whether a project is based on sound economic theory is not within the scope of judicial review. Such considerations are matters of legislative and executive judgment and do not necessarily affect the constitutionality of the conduct. The question of the propriety of a particular legislative or executive decision is for the electorate as the voting

public to accept or reject at the next appropriate public election.

■ The development of this industrial park is not a lending of credit prohibited by Section 179 of the Constitution. The City is not loaning or giving a private company any form of credit. It is not signing a note on behalf of the company guaranteeing repayment of any amount due. It is not issuing bonds with the debt service to be paid from future appropriations in city budgets. Rather, the City has bought and paid for land and is selling it without any involvement concerning the method of financing by the purchaser. Therefore, there is no lending of credit, but simply a sale of real property. There is no future liability created by the sale of lots in this industrial park. In view of the fact that there are no future liabilities, there is no lending of credit. The argument presented by Dannheiser regarding the lending of credit issue in *Hayes* is not pertinent to this case because the City has not incurred any future obligation in connection with the industrial park. Any reliance by Dannheiser on the *Hayes* opinion is misplaced.

### III. Home Rule Statutes

■ The development of the Henderson Corporate Park is not prohibited by the Kentucky Home Rule Statutes, KRS 82.081, et seq. Dannheiser argues that the City's ability to participate in local economic development is limited to the system set out in the Local Industrial Development Authority Act, KRS 154.50–301 to 154.50–346. We cannot agree. The plain language of the statutes demonstrates that the Act is permissive and does not require any city to act pursuant to the legislation in order to pursue local economic development.

KRS 82.082 provides in pertinent part as follows:

(1) A city may exercise any power and perform any function within its boundaries, including the power of eminent domain in accordance with the provi-

sions of the Eminent Domain Act of Kentucky, that is in furtherance of a public purpose of the city and not in conflict with a constitutional provision or statute.

(2) A power or function is in conflict with a statute if it is expressly prohibited by a statute or there is a comprehensive scheme of legislation on the same general subject embodied in the Kentucky Revised Statutes . . .

Dannheiser claims that the Industrial Development Act is a comprehensive scheme of legislation on the same general subject as the actions by the City. The circuit court and the Court of Appeals agreed with the City that the Local Industrial Development Authority Act provides a permissive method of industrial development rather than a comprehensive legislative scheme.

KRS 82.082(1) delegates all possible municipal powers to cities except those specifically denied to them. A particular function is in conflict with a statute if it is expressly prohibited by a statute or there is a comprehensive system of legislation on the same general subject embodied in state law. KRS 82.082(2).

■ In order to rise to the level of a comprehensive system or scheme, the General Assembly must establish a definite system that explicitly directs the actions of a city. *Whitehead v. Estate of Bravard,* Ky., 719 S.W.2d 720 (1986). *Historic Licking Riverside Civic Association v. City of Covington,* Ky., 774 S.W.2d 436 (1989), holds that no longer does a city need special statutory authority to act unless, of course, to do so is in conflict with a statute mandating otherwise, so long as the action is consistent with a public purpose. KRS 446.010(20) states that the word "may" is permissive when used in statutes. Clearly, the word "may" is permissive and not mandatory. The Act does not require the City to form a local economic development authority. Thus, the plain meaning of the statute is that any

governmental unit by act of its legislative body, may establish a nonprofit industrial authority. The Act does not establish an exclusive method of achieving economic development. The act itself may be comprehensive in its approach to the situation, but it does not monopolize the field of economic development by governments and does not totally occupy the field. The legislature certainly knows the scope of its power to provide mandatory, as distinguished from permissive, legislation. *See Peoples Gas Company of Kentucky, Inc. v. City of Corbin,* Ky., 625 S.W.2d 848 (1981), holding that the statute using mandatory language and granting exclusive jurisdiction to the public service commission preempted the field prohibiting city involvement in that field of activity.

An examination of Kentucky law indicates that there are other possible approaches to economic development. KRS 154.12, et seq.; KRS 42.4588 and KRS 154.20 each allow a city another possible method of developing property and establishing economic growth. The act is not the sole method available to a city.

The method chosen by the City is not in conflict with the provisions of the Act. *Commonwealth v. Do. Inc.,* Ky., 674 S.W.2d 519 (1984), holds that the fact that the state has enacted legislation does not prevent local governments from establishing additional legislation or acting as long as there is no conflict between them. "With the institution of Home Rule, the General Assembly changed the equation and delegated all essential and implied powers to cities except those specifically denied to them." J. David Morris, *Municipal Law,* 70 Ky.L.J. 293–96. Here the City determined to pursue a valid public purpose through an alternative complementary means although not under the specific directions of the Act. It was not necessary for them to perform under the Act by virtue of the provisions of the Home Rule statutes.

The trial judge correctly found that the actions of the City were not in violation of Section 3 or 179 of the Kentucky Constitution because the City acted in furtherance of a valid public purpose. There was no genuine issue of material fact and the City was entitled to a judgment on the question as a matter of law. The Court of Appeals properly affirmed the decision of the circuit court. The decision of the Court of Appeals and the circuit court is affirmed.

GRAVES, JOHNSTONE, STUMBO, and WINTERSHEIMER, JJ., concur.

LAMBERT, C.J., files a separate dissenting opinion in which COOPER and KELLER, JJ., join.

LAMBERT, Chief Justice, dissenting.

Respectfully, I dissent.

In the trial court, this case was resolved by summary judgment. Before a court may properly render summary judgment, it must determine that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. CR 56.03. From the facts presented here, I believe the trial court to have erred, with such error having been perpetuated by the Court of Appeals and this Court's majority.

At issue here is whether there was a valid public purpose supporting the City of Henderson in its entry into the business of industrial development. As the majority correctly acknowledges, without the determination of a valid public purpose, KRS 82.082 prohibits a city from engaging in industrial development. On the other hand, if there is a valid public purpose, the city may proceed. Here, the evidence as to economic development, which was the sole basis for the claimed public purpose, was in conflict.

Dannheiser presented evidence from which a trier of fact could have believed that the City lacked a sufficient public purpose. The City Council neglected to obtain guarantees from the private buyers that the City would be assured of repayment of the taxpayers' money or receive

any benefit whatsoever. The City Council did not undertake any fact-finding to show that the private buyers would indeed bring economic opportunities to the City. The City sold some the land in its industrial park at prices less than fair market value, often for as little as $1,500 per acre, the price the City paid for the land in its unimproved state. Statistics from the Kentucky Department for Employment Services indicated that the unemployment rate in the area was not significantly higher than the state or national rate. This evidence was sufficient to create an issue of fact as to whether the City's industrial park served a proper public purpose. That question should have been fully litigated.

The City could have avoided the burden it undertook. In 1990, the General Assembly enacted the Local Industrial Development Authority Act, codified at KRS 154.5–301 – 346. This statute provides a comprehensive scheme for municipal participation in industrial development. The statute contains a legislative determination of public purpose, providing the statutory scheme is followed. See KRS 154.5–020 – 030. But unless the statutory scheme is observed, the municipality takes on itself the burden of establishing the public purpose under which it acts. The majority reiterates that "the Act does not establish an exclusive method of achieving economic development" and "the act is not the sole method available to the city." With this, I have no disagreement. But in my view, when a municipality undertakes "an alternative complimentary means" as it did here, it bears the burden of demonstrating the existence of a valid public purpose and the burden of showing itself entitled to prevail under the rules of Court, including CR 56.03.

COOPER and KELLER, JJ., join this dissenting opinion.