

NUMBER 13-13-00500-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

**GREGORY FONSECA,** **Appellant,**

**v.**

**THE STATE OF TEXAS,** **Appellee.**

---

### On appeal from the 25th District Court
### of Gonzales County, Texas.

---

# MEMORANDUM OPINION

### Before Chief Justice Valdez and Justices Garza and Longoria
### Memorandum Opinion by Justice Longoria

Appellant, Gregory Fonseca, appeals his jury convictions for two counts of aggravated assault with a deadly weapon. The jury assessed a life sentence for count one and a ninety-nine year sentence for count two. For each count, the jury assessed a

fine in the amount of $10,000. In this appeal, appellant contends that the trial court erred by failing to declare a mistrial because of alleged juror misconduct. In addition, appellant also contends, and the State agrees, that the trial court erred in ordering appellant to pay $500 in attorney's fees that were assessed as court costs for count one. Finally, appellant complains, and the State agrees, that the trial court erred in entering a judgment stating that the two $10,000 fines assessed against appellant are to run consecutively, instead of concurrently. For the reasons set forth below, the Court modifies the trial court's judgment to delete the $500 in attorney's fees assessed against appellant and included as court costs in count one and to state that the two $10,000 fines imposed against appellant shall run concurrently. The Court affirms the trial court's judgment as modified.

## I. BACKGROUND

During the testimony of Samantha Manning, a forensic scientist for the Texas Department of Public Safety Laboratory, the trial court noticed that a juror appeared to have fallen asleep. The trial court promptly recessed the trial. After the recess, the trial court instructed the jurors that if they needed a break to stay alert to let him know and he would give them a break. The testimony of Samantha Manning continued. She explained to the jurors how she determined which samples should be taken and sent to the DNA forensic scientist for analysis. Appellant did not object to the sleeping juror, did not ask the trial court to inquire of the juror about testimony he or she may have missed, and did not move for a mistrial.

Later in the trial, the State announced that it had learned that members of appellant's family were possibly trying to contact one or more jurors and that two jurors had shared something written on their notepad with each other. Appellant immediately

2

moved for a mistrial. The trial court withheld its ruling and decided to speak with the jurors to ensure the fairness of the proceedings.

After speaking to the two jurors in chambers, the judge returned to the courtroom with all parties present, outside the presence of the jurors, and explained that after talking with both jurors he felt that there had been no impropriety. The trial court also stated that he did not see any passing of notes between the jurors. Appellant moved for a mistrial stating that he did not believe the jurors could be fair and that they may have felt pressure from being singled out. The trial court stated that he handled the situation in a way so that the jurors would not have felt intimidated and based on his conversations with them he did not believe they felt intimidated by the inquiry. The trial court denied appellant's motion for mistrial. The following day, appellant renewed his request for a mistrial, this time, appellant added that some of the jurors "couldn't stay awake." The court denied the motion. The jury found appellant guilty of both counts of aggravated assault.

Before the punishment phase began, appellant moved again for a mistrial, arguing that there had been "serious misconduct on the part of the jury" because "[t]hey fell asleep" and "[t]hey could not pay attention." Appellant also argued that the jurors "were intimidated by the Court." The trial court denied the motion.

During the second day of the punishment phase of trial, appellant's sister, Agapita Fonseca, asked to speak on the record, outside the presence of the jury. Ms. Fonseca claimed that she witnessed a juror sleeping Monday, Tuesday, and Wednesday of the guilt-innocence phase of trial. Ms. Fonseca claimed that after the verdict was read the same juror smirked at her and she felt "disrespected." When asked again by appellant's trial counsel if there had been any contact between her family members and the jurors,

3

she said no; however, she indicated that she was Facebook friends with one of the jurors. She then clarified that she and the juror have mutual friends through Facebook. Ms. Fonseca claimed that one of the jurors was very close to a brother of hers. The trial court asked Ms. Fonseca if there had been any contact between any jurors and her family members prior to the verdict, and she answered that there had not been.

In response to Ms. Fonseca's statements, the trial court explained that he had been observing the jurors throughout the entire trial and that there was only one time during the trial when he found one juror asleep, a situation which he addressed by taking a recess. The trial court noticed some jurors had their eyes closed during the testimony, but he believed they were not asleep and instead were listening attentively to the testimony. The trial court stated that the "integrity of the trial was not jeopardized as a result of that juror [who he believed was asleep]." In response to Ms. Fonseca continuing to argue with the trial court, he stated that "we did everything that we're supposed to do to make the trial fair."

The proceedings then resumed, and as set forth above, the jury gave appellant a life sentence for count one and a ninety-nine year sentence for count two. The jury also assessed a fine in the amount of $10,000 for each count. This appeal ensued.

## II. MISTRIAL

In his first issue, appellant argues that the trial court erred by denying his requests for a mistrial.

### A. Applicable Law

A mistrial is a device used to halt trial proceedings when error is so prejudicial that expenditure of further time and expense would be wasteful and futile. *Ladd v. State*, 3

S.W.3d 547, 567 (Tex. Crim. App. 1999). Thus, a trial court may properly exercise its discretion to declare a mistrial if an impartial verdict cannot be reached, or if a verdict of conviction could be reached but would have to be reversed on appeal due to an obvious procedural error. *Id.* The determination of whether a given error necessitates a mistrial must be made by examining the particular facts of the case. *Id.*

A mistrial is an appropriate remedy in "extreme circumstances" for a narrow class of highly prejudicial and incurable errors. *Ocon v. State*, 284 S.W.3d 880, 884 (Tex. Crim. App. 2009). Because it is an extreme remedy, a mistrial should be granted "only when residual prejudice remains" after less drastic alternatives are explored. *Id.* at 884–85. Less drastic alternatives include instructing the jury "to consider as evidence only the testimony and exhibits admitted through witnesses on the stand," and questioning the jury "about the extent of any prejudice," if instructions alone do not sufficiently cure the problem. *Id.* at 885. Although requesting lesser remedies is not a prerequisite to a motion for mistrial, when the movant does not first request a lesser remedy, we will not reverse the court's judgment if the problem could have been cured by the less drastic alternative. *Id.*

**B. Standard of Review**

A trial court's denial of a mistrial is reviewed for an abuse of discretion. *Id.* at 884. An appellate court views the evidence in the light most favorable to the trial court's ruling, considering only those arguments before the court at the time of the ruling. *Id.* The ruling must be upheld if it was within the zone of reasonable disagreement. *Id.*

## C. Discussion

Appellant argues that all of the "facts taken together place into question whether there was juror misconduct in the trial of this case." We will examine each contention in turn.

The parties agree that a contemporaneous objection is required to preserve error with respect to a sleeping juror. *See Thieleman v. State*, 187 S.W.3d 455, 458 & n.3 (Tex. Crim. App. 2005). Appellant did not make a contemporaneous objection to the sleeping juror. Accordingly, error was not preserved. *See id.*

Furthermore, "a court has considerable discretion in deciding how to handle a sleeping juror." *Menard v. State*, 193 S.W.3d 55, 60 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd) (quoting *United States v. Freitag*, 230 F.3d 1019, 1023 (7th Cir. 2000)). Even if appellant had properly preserved this issue for appellate review, he has not demonstrated that the trial court's finding that the integrity of the trial was not jeopardized as a result of the sleeping juror or that the trial court's actions to remedy the situation by taking a recess were outside the zone of reasonable disagreement. *See Ocon*, 284 S.W.3d at 885. The same is true with respect to the jurors who were listening with their eyes closed. No abuse of discretion has been shown.

Next, appellant argues that the trial court erred by denying his request for a mistrial because there were allegedly communications between appellant's family and one or more of the jurors. *See* TEX. CODE CRIM. PROC. ANN. art. 36.22 (West, Westlaw through 2013 3d C.S.) ("No person shall be permitted to converse with a juror about the case on trial except in the presence and by the permission of the court."). "When a juror converses with an unauthorized person about the case, injury to the accused is presumed, and a

6

new trial may be warranted." *Hughes v. State*, 24 S.W.3d 833, 842 (Tex. Crim. App. 2000). However, appellant has the burden of proving the allegation of juror misconduct. *Id.* In this case, there are allegations of juror misconduct, but there is no evidence to prove that any misconduct actually occurred or to support such a finding. Accordingly, the trial court did not abuse its discretion by denying appellant's request for a mistrial based on alleged juror misconduct involving alleged communications with members of appellant's family. *See id.*

Finally, appellant contends that he was entitled to a mistrial because two jurors allegedly passed notes to each other. Determinations of historical fact and assessment of witness credibility and believability are left almost entirely to the discretion of the trial judge, and where there is conflicting evidence there is no abuse of discretion if the motion is overruled. *Id.* In this case, the State brought the alleged note-passing incident to the trial court's attention. The prosecutor told the trial court:

> In addition, your Honor, we have been made aware that during the Court's admonishment to the Jury about not having contact with any parties, or third parties, that particular juror made a communication on his notepad with the juror sitting next to him. They both grinned and looked over at the Fonseca family. And then when the Bailiff – and when they saw the Bailiff watching, they put the notebook away.

Ultimately, the judge rejected the allegations of note-passing: "I was keeping something of an eye on the jurors myself when I gave that admonition after lunch, and I didn't see anything that looked like note passing to me. Of course, I could've missed it. I miss things from time to time, but I didn't see it." In addition, the trial court's determination was based on his interview of the two jurors in chambers, during which one of the jurors assured the court that he had merely written his own name on his notepad. The trial court found no impropriety had occurred. This is an issue of fact, and the trial court's finding is

supported by the record.  Accordingly, we will defer to the trial court's resolution of this matter.  *See id.*  Again, no abuse of discretion has been shown.

Appellant's first issue is therefore overruled.

### III. ATTORNEY'S FEES

In his second issue, appellant argues that the trial court erred by assessing $500 in attorney's fees against him and including that amount as court costs in count one of the judgment because there is no evidence that his status as an indigent defendant changed after the court's initial determination.  *See* TEX. CODE CRIM. PROC. ANN. art. 26.05(g) (West, Westlaw through 2013 3d C.S.); *Mayer v. State*, 309 S.W.3d 552, 556 (Tex. Crim. App. 2010) (holding that no objection at trial is necessary to preserve this issue).  The State concedes the point of error and agrees that the order of attorney's fees assessed in the judgment should be deleted.  Accordingly, the Court sustains appellant's second issue.

### IV. FINES

In his third issue, appellant argues that the trial court erred by assessing fines in the amount of $20,000.  Again, the State concedes the error.  Because the offenses arose out of the same criminal episode, the $10,000 fines assessed for the two counts must run concurrently, not consecutively.  *See State v. Crook*, 248 S.W.3d 172, 174 (Tex. Crim. App. 2008).  Appellant's third issue is sustained.

### V. CONCLUSION

The Court modifies the trial court's judgment (1) to delete the $500 in attorney's fees assessed against appellant and included as court costs in count one of the judgment

and (2) to state that the $10,000 fines imposed against appellant are to run concurrently.

The trial court's judgment is affirmed as modified.


NORA L. LONGORIA
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
13th day of November, 2014.