**KENTUCKY RESTAURANT ASSOCIATION; Kentucky Retail Federation; Packaging Unlimited, LLC, Appellants**

v.

**LOUISVILLE/JEFFERSON COUNTY METRO GOVERNMENT,**
Appellee

**2015-SC-000371-TG**

Supreme Court of Kentucky.

RENDERED: OCTOBER 20, 2016

COUNSEL FOR APPELLANTS: Brent Robert Baughman, Bingham Green-ebaum Doll, LLP, Aleksandr Litvinov, Bingham Greenebaum Doll, LLP

·COUNSEL FOR APPELLEE: Michael J. O'Connell, Jefferson County Attorney, David A. Sexton, Assistant Jefferson County Attorney, Eamon Patrick ·Mulvi-hill, Assistant Jefferson County Attorney, Sarah Jessica Martin, Assistant Jefferson County Attorney

## OPINION OF THE COURT BY JUSTICE CUNNINGHAM

Perhaps no state in the Union holds a stronger affection for local government than does the Commonwealth of Kentucky. While we rank 26th ·in population in. the United States, we have the third highest number of counties. Throughout our long history, any sentiment to reduce the num-ber of counties has been met with immedi-ate and resounding rejection. Writer Rob-ert M. Ireland has summed it up best. "Although not alone in their refusal to tamper with their counties, Kentuckians arguably attach more significance to these constitutional creatures than . any other Americans. In Kentucky, for better or worse, counties are truly little kingdoms."[1]

It is with great deference to this histori-cal notion that we address the challenging issue in this case.

The case before us provides a historic clash between the competing authority of the Louisville-Jefferson County govern-ment and the Kentucky General Assembly. The specific issue is whether Louisville has the authority to enact an ordinance requir-ing a higher wage than the statutory mini-mum.

### Minimum Wage Laws

Australia and New Zealand were the first of the developed countries to ·impose minimum pay for employees back in 1894.

1. Robert M. Ireland, "Little Kingdoms" p. 150.

It wasn't long from that time when the voice of organized labor began to be heard and such laws spread to other countries. The United Kingdom passed its own minimum wage laws in 1909.

The United States was a relatively late-comer to the threshold wage requirement. Only after the Great Depression and the passing of the Federal Fair Labor Standards Act in 1938 did wage control come upon the American scene. That law included youth employment standards, overtime pay, recordkeeping and other prescriptions for government employees at the local and state levels. It is nostalgia of a different time to learn that the first Federal minimum wage set was 25 cents an hour.

Kentucky's first minimum wage laws were enacted in 1938 and only applied to women and children. The act also established an administrative compensation board which reviewed wages of certain industries and required minimum pay for that business. In 1966, the statutes were updated to include all employees of any particular industry. It wasn't until 1974 that Kentucky created a minimum wage for all workers that was set by statute at $ 1.30. The current minimum wage is $7.25.

### Factual and Procedural Background

In early 2015, The Louisville/Jefferson County Metro Government ("Louisville Metro") enacted its own minimum wage ordinance for all employers within the Louisville Metro boundary, to be effective July 1, of that year. Louisville Metro Ordinance No. 216, Series 2014 (the "Ordinance"). The wage schedule provided for incremental increases for subsequent years, adjusted in part to reflect the consumer price index. The minimum wage set by the ordinances were higher than the $7.25 minimum wage presented in KRS 337.275.

Appellants in this case are the Kentucky Restaurant Association, Inc. ("KRA"), Kentucky Retail Federation, Inc., ("KRF"), and Packaging Unlimited, LLC ("Packaging Unlimited"). On February 13, 2015, the Appellants filed an action in the Jefferson Circuit Court against Louisville Metro, attempting to void the ordinance as being outside the authority of Louisville Metro to enact. An injunction barring the enforcement of the Ordinance was also sought. A judgment on the pleadings was requested by both sides.

On June 29, 2015, the Jefferson Circuit Court entered a ruling in Louisville Metro's behalf and denied the relief sought. The Court of Appeals denied a request for Emergency Relief pursuant to CR 76.33 and CR 65.08(7). This Court accepted transfer of this case in September of 2015. For the reasons stated herein, we reverse the Circuit Court and remand.

### Analysis

Section 156b is the enabling constitutional permission for the General Assembly to afford cities the power to pass laws which are "in furtherance of a public purpose." The restrictive language in that provision, however, proscribes any local ordinances being passed which are "in conflict with a constitutional provision or statute."

Of course this case turns upon the last sentence. Therefore, we must turn to what statutes are controlling.

Local governments in Kentucky are vested with broad authority. See KRS 82.082; and KRS Chapter 83. This is commonly known as "Home Rule." In addition, Louisville Metro is categorized by statute as a first class city and, in the year 2000, was afforded by statute a special privilege of consolidating its government with that of the county to form one body for governing the entire county. KRS 67C. 101. The

General Assembly determined that Louisville Metro is "sufficiently different from those found in other cities to necessitate this grant of authority and *complete* home rule." KRS 83.410(4) (emphasis added). Therefore, Louisville Metro possesses enhanced authority that is distinct from other municipalities. Yet, the sovereignty of the state still rules supreme.

*Conflict*

■■■ The law on this issue is clear. A local government's "power or function is in conflict with a statute if it is expressly prohibited by a statute or there is a comprehensive scheme of legislation on the same general subject embodied in the Kentucky Revised Statutes .... KRS 82.082(2) (emphasis added). In that same vein, "[a]n ordinance ... cannot forbid what a statute expressly permits. ..." *City of Harlan v. Scott,* 290 Ky. 585, 162 S.W.2d 8, 9 (1942). Neither Home Rule nor Louisville Metro's first class distinction alter this rudimentary principle.

The Ordinance at issue here requires businesses to pay workers a higher wage than the statutory minimum. KRS 337.275(1). In other words, what the statute makes legal, the Ordinance makes illegal and, thus, prohibits what the statute expressly permits. This is precisely the type of "conflict" that is forbidden under Section 156b of our Constitution and KRS 82.082(2). *Accord Wholesale Laundry Bd. of Trade, Inc. v. City of New York,* 17 A.D.2d 327, 234 N.Y.S.2d 862 (N.Y. App. Div. 1962) (invalidating a local ordinance that "forbids a hiring at a wage which the state law permits and so prohibits what the state law allows. Semantic exercises in this connection cannot change the concept."), *aff'd without opinion,* 12 N.Y.2d 998, 239 N.Y.S.2d 128, 189 N.E.2d 623 (1963).

Therefore, the Ordinance is invalid unless additional statutory authority permits municipalities to raise the minimum wage. Louisville Metro cites KRS 337.395 as one such provision:

Any standards relating to minimum wages, maximum hours, overtime compensation, or other working conditions, in effect under any other law of this state which are more favorable to employees than standards applicable hereunder shall not be deemed to be amended, rescinded or otherwise affected by KRS 337.275 to 337.325, 337.345, and 337.385 to 337.405 but shall continue in full force and effect until they are specifically superseded by standards more favorable to such employees by operation of or in accordance with KRS 337.275 to 337.325, 337.345, and 337.385 to 337.405 or regulations issued thereunder.

Contrary to Louisville Metro's argument, this so called "saving provision" merely protects certain state laws that pre-date statutory laws on the same subject. Therefore, this provision is inapplicable to the present issue. Although we could conclude our analysis here, our determination is fortified by further examination of the statutory scheme at issue.

*A Comprehensive Statutory Scheme*

■■■ A cursory glance at the numerous provisions contained in Chapter 337 demonstrates that it was intended to be a detailed and thorough regulation of wages. In fact, there are over 25 sections in this chapter, including penalty provisions. Some of the sections are quite lengthy. The chapter comprises over 50 pages in Michie's Kentucky Revised Statutes. The entire volume deals with employment related statutes, including, Child Labor, Unemployment Compensation, Occupational Safety and Health of Employees, and Workmen's Compensation.

Furthermore, the minimum wage statute itself contains no room for local legislation. KRS 337.275(1) states the following:

Except as may otherwise be provided by this chapter, every employer shall pay to each of his employees wages at a rate of not less than five dollars and eighty-five cents ($5.85) an hour beginning on June 26, 2007, not less than six dollars and fifty-five cents ($6.55) an hour beginning July 1, 2008, and not less than seven dollars and twenty-five cents ($7.25) an hour beginning July 1, 2009. If the federal minimum hourly wage as prescribed by 29 U.S.C. sec. 206(a)(1) is increased in excess of the minimum hourly wage in effect under this subsection, the minimum hourly wage under this subsection shall be increased to the same amount, effective on the same date as the federal minimum hourly wage rate. If the state minimum hourly wage is increased to the federal minimum hourly wage, it shall include only the federal minimum hourly rate prescribed in 29 U.S.C. sec. 206(a)(1) and shall not include other wage rates or conditions, exclusions, or exceptions to the federal minimum hourly wage rate. In addition, the increase to the federal minimum hourly wage rate does not extend or modify the scope or coverage of the minimum wage rate required under this chapter.

Based on the contents of Chapter 337 and KRS 337.275(1) in particular, it defies credulity to assert that the Commonwealth has failed to enact a "comprehensive scheme of legislation on the same general subject" of wages, and the minimum wage in particular. KRS 82.082(2). Case law also proves instructive.

For example, Louisville Metro cites *Lexington Fayette County Food & Beverage Ass'n v. Lexington–Fayette Urban County Gov't*, 131 S.W.3d 745 (Ky. 2004). That case involved an indoor smoking ban that was enacted by the local government in Fayette County. In addressing a statutory issue similar to the present case, we observed that "[t]he mere presence of the state in a particular area of the law or regulation will not automatically eliminate local authority to enact appropriate regulations." *Id.* at 750. We ultimately determined that the state's "presence" was minimal and constituted a non-comprehensive "collection of various statutes that mention smoking in a specific context." *Id.* at 751. Therefore, we upheld that Fayette County smoking ban as valid.

In contrast *Kentucky Licensed Beverage Ass'n v. Louisville–Jefferson Cnty. Metro Gov't*, provides an example where the Court has invalidated a local ordinance. Therein, we held:

Because the General Assembly has previously enacted a comprehensive scheme of legislation dealing with the regulation of alcoholic beverages, codified at KRS Chapter 241 through Chapter 244, which prescribes no means whereby the local ABC Administrator can levy civil fines upon a non-licensee, we find that the Metro Government has impermissibly granted authority to the local ABC Administrator, which is not provided for by any state statute.

127 S.W.3d 647, 648 (Ky. 2004).

Unlike the smoking ban case previously discussed, the state's "presence" in the fields governed by Chapter 337 (Wages and Hour) and Chapters 241-244 (Alcoholic Beverages), is extensive.

Also contrary to the smoking ban case where the General Assembly had not legislated on the issue of indoor smoking, the General Assembly has enacted specific legislation on the issue of wages, including the minimum wage. *Cf. City of Harlan*, 162 S.W.2d at 9–11 (invalidating local ordinance prohibiting Sunday operation of a movie theater because it conflicted with a

state statute). In contrast, to the above cited case law, the authority cited by Louisville Metro is unpersuasive. *See, e.g., Dannheiser v. City of Henderson,* 4 S.W.3d 542 (Ky. 1999).

The issue in *Dannheiser* was whether local ordinances promoting economic development violated Kentucky's Local Industrial Development Authority Act. We observed that "[i]n order to rise to the level of a comprehensive system or scheme, the General Assembly must establish a definite system that explicitly directs the actions of a city." *Id.* at 548 (citation omitted). The Court held that the Economic Development Act was not a comprehensive statutory scheme based on the following analysis:

> An examination of Kentucky law indicates that there are other possible approaches to economic development. KRS 154.12, et seq.; KRS 42.4588 and KRS 154.20 each allow a city another possible method of developing property and establishing economic growth. The act is not the sole method available to a city. The method chosen by the City is not in conflict with the provisions of the Act. *Id.* at 549.

*Dannheiser* is readily distinguishable from the present case.

Unlike the Development Act, Chapter 337 (Wages and Hour), clearly constitutes a "definite system." Furthermore, the General Assembly has not provided municipalities with "other possible approaches" to wage legislation such as those development initiatives discussed in *Dannheiser.* And although the minimum wage statute explicitly directs the actions of employers, not municipalities, such a distinction is immaterial here. Louisville Metro has made illegal and forbidden what the statute expressly permits.

Louisville Metro also argues that the Ordinance is valid because the General Assembly did not expressly preempt local minimum wage legislation by clear and unmistakable language. *Se* KRS 65.870 (expressly forbidding local governments from regulating firearms); and *Dannheiser,* 4 S.W.3d at 549 ("[t]he legislature certainly knows the scope of its power to provide mandatory, as distinguished from permissive, legislation."). Contrary to Louisville Metro's argument, however, express preemption is not required when the General Assembly has enacted a comprehensive statutory scheme. *See Kentucky Licensed Beverage Ass'n,* 127 S.W.3d at 648. If it were otherwise, the comprehensive scheme doctrine would be pointless.

In summary, Chapter 337 provides a comprehensive statutory scheme on the issue of wages. Because the Ordinance conflicts with this scheme, and KRS 337.275(1) in particular, the Ordinance is invalid. As such, it is unnecessary to address Appellants' other argument concerning Louisville Metro's authority to create a private cause of action to enforce the Ordinance. That issue is now moot. However, it is necessary to address relevant federal law.

### Federal Law

Chapter 29 of the United States Code, subsection 218(a) concerns the federal minimum wage and is titled "Relation to Other Laws." It provides:

> No provision of this chapter or of any order thereunder shall excuse noncompliance with any Federal or State law or municipal ordinance establishing a minimum wage higher than the minimum wage established under this chapter . . . .

A facial reading of this statute indicates Congress' intent to preclude *federal* preemption of local laws establishing a higher minimum wage. However, this statute does not discuss the issue of state preemption,

which is squarely a matter of state law. As previously discussed, the Ordinance is invalid under Kentucky law.

Many have scoffed at our state motto "United We Stand, Divided We Fall." And it is true that we have for our entire history been a state deeply divided over major—sometimes cataclysmic—issues. On the question before us, however, we must be united. At least until our General Assembly, a representative body of legislators from Hickman to Pikeville, directs otherwise.

## Conclusion

We hold that Louisville Metro exceeded its authority by enacting Ordinance No. 216, Series 2014 (0-470-14). That Ordinance is therefore invalid and unenforceable. For the foregoing reasons, we reverse the decision of the Jefferson Circuit Court and remand for entry of an order consistent with our decision.

All sitting. Minton, C.J.; Keller, Noble, and Venters, JJ., concur.

Hughes, J., concurs in result only by separate opinion.

Wright, J., dissents by separate opinion.

## HUGHES, J., CONCURRING IN RESULT ONLY:

I respectfully concur in result only. I concur in the result reached by the majority because I recognize that where the General Assembly has enacted a "comprehensive scheme of legislation," KRS 82.082(2), local government may not legislate to the contrary. Because KRS Chapter 337 is a comprehensive statutory scheme on the issue of wages, and more specifically the minimum wage, even the extremely broad home rule powers given Louisville Metro do not allow for an ordinance contradicting the statute. That said, the dissent aptly quotes KRS 83.410(4) wherein the General

Assembly recognizes that "conditions found in cities of the first class are sufficiently different from those found in other cities to necessitate this grant of authority and complete home rule." It is no accident that the two largest cities in Kentucky, Louisville and Lexington, have adopted local ordinances that provide for a higher minimum wage. Conditions are indeed different in urban areas, including the cost of living, which is indisputably higher than in the more rural areas of our Commonwealth. However modest the current minimum wage of $7.25 is generally, it is even more so in areas where housing, fuel and other necessities cost more. Being "united" rather than "divided" does not mean that all issues of great significance to Kentuckians must be treated at the state level in a homogenous way. Our General Assembly has long recognized that fundamental principle and they could well recognize home rule authority in the area of minimum wages. The fact is, as of yet, they have not done so, and, under existing Kentucky law, the comprehensive scheme in Chapter 337 is a bar to the Louisville Metro ordinance.

## WRIGHT, J., DISSENTING:

I respectfully dissent from the majority and would affirm the Jefferson Circuit Court. As the majority points out, § 156b of the Kentucky Constitution states that: "[t]he General Assembly may provide by general law that cities may exercise any power and perform any function within their boundaries that is in furtherance of a public purpose of a city and not in conflict with a constitutional provision or statute." Where I part ways with the majority is in its conclusion that the Louisville Metro ordinance increasing the minimum wage "conflicts] with a constitutional provision or statute." I find no conflict between the ordinance and existing minimum wage laws.

Since Louisville Metro is a first-class city, its citizens were granted "the authority to govern themselves to the full extent required by local government and not in conflict with the Constitution or laws of this state or by the United States." KRS § 83.410(1). The statute goes on to provide that these powers are in addition to powers granted to cities through other provisions of law; it further states that the statute should be broadly construed to effectuate its purpose. *Id.* at (2), (3). Finally, the General Assembly explained this broad grant of authority, stating:

> The powers herein granted are based upon a legislative finding that the urban crisis cannot be solved by actions of the General Assembly alone, and that, the most effective agency for the solution of these problems is the government of a city of the first class. This legislative finding is based upon hearings held by the General Assembly and the conclusion of its members that conditions found in cities of the first class are sufficiently different from those found in other cities to necessitate this grant of authority and complete home rule.

*Id.* at (4). The majority ruling fails to give effect to the legislature's broad grant of authority to the Louisville Metro government.

The General Assembly granted extraordinary powers to Louisville Metro because the state body could not adequately address its concerns. Minimum wages within Kentucky's only first-class city is the type of issue contemplated by that exceptional grant of authority. In passing the ordinance, the Louisville Metro government specifically found "it is incumbent upon us to take legislative steps to help lift working families out of poverty, decrease income inequality, and boost our economy."

I disagree with the majority's holding that Louisville Metro's ordinance increasing the minimum wage conflicts with Kentucky's minimum wage law. Taking a closer look at that law, KRS 337.275(1) begins, "[e]xcept as may otherwise be provided by this chapter, every employer shall pay to each of his employees' wages at a rate of *not less than* ... (Emphasis added.) Please note that the statute does not state that the minimum wage shall be or cannot be more than a set amount. Instead, the statute provides that the wages shall be paid "at a rate of not less than." This law merely provides a floor that wages may not go below—rather than a ceiling they may not rise above.

The language establishing a minimum wage does not, as the majority asserts, amount to something expressly permitted by the statute being prohibited by the ordinance. The statute requires an employer to pay a wage of "not less than" the amount set by statute. This statute was passed to protect workers from being paid a lesser wage. The majority's view is that the statute expressly permitted the employer to pay the minimum. This reading of the statute requires a view that it was passed to protect the employer. The majority's conclusion is inconsistent with the purpose of the statute and its history. There is simply no conflict between the two laws.

The statutes are entirely consistent with Louisville Metro having the authority to pass the ordinance in question. KRS 337.395 specifically authorizes higher minimum wages if they are more favorable to the worker than the state minimum wage. The majority rejects the applicability of this statute based on the assertion that it only applied to laws already in effect. This totally fails to consider the statute's impact as an expression of legislative intent. Since KRS 337.395 specifically authorized higher minimum wages at the time Kentucky passed its minimum wage, it is impossible

to view the Kentucky minimum wage as prohibiting an ordinance establishing a higher minimum.

The majority also asserts that Kentucky has preempted the minimum wage law by passing laws that are so broad and all-encompassing that the Louisville Metro ordinance is prohibited. Although the state has passed a lot of laws regarding workers, very few of those specifically address the minimum wage. These statutes are consistent with the higher Louisville Metro minimum wage.

How can the state laws be so broad and comprehensive a scheme as to have preempted this area of the law, When the statute provides that any other minimum wage law in the state would continue in effect if it is more favorable to workers? KRS 337.395 states that "[a]ny standards relating to minimum wages ... in effect under any other laws of this state which are more favorable to employees ... shall not be deemed to be amended, rescinded or otherwise affected : ... but shall continue in full force and effect. ...." As stated above, the majority rejects this statute as only affecting laws already in existence. Even if the other laws described in this statute were already in existence, the statute specifically allows laws for higher minimum wages. Therefore, it is impossible for the state law to be so broad and all-encompassing as to prohibit other minimum wage laws more favorable to workers.

Furthermore, the federal government passed minimum wage laws long before Kentucky. I would also point out that the federal minimum wage law, summarily dismissed by the majority, would not "excuse noncompliance with... municipal ordinance establishing a minimum wage higher than the minimum wage established under this chapter ...." 29 U.S.C. § 218. Therefore, the federal law specifically provides that states and municipalities could' pass higher minimum wages. What's more, the state has not preempted federal minimum wage law since it merely matched the amount of the federal law rather than setting a higher minimum wage.

Some federal laws delegate the governing statutes and enforcement to the state in certain areas (i.e. environmental laws) so long as the state follows certain guidelines and requirements. The federal minimum wage would not be supplanted if Kentucky's minimum wage were higher. The federal law merely provides that it would not excuse compliance with a higher state or municipal minimum wage. Therefore, as to any workers covered by the federal law—and I posit that percentage accounts for most Kentucky employees— the federal law still controls. The state government has merely enacted a law that echoes what employers must pay under existing federal law.

In short, the federal minimum wage law covers the vast majority of Kentucky workers, and that law contemplates municipalities' ability to enact a higher minimum wage. I agree that the power of a municipality comes from the legislature. However, the Kentucky legislature has decided against passing any restrictions on a municipality enacting a minimum wage higher than the state's. I note that more than a dozen states in recent years have passed "preemption laws" prohibiting municipalities from raising the minimum wage above that prescribed by the state—thus creating not only a floor, but also a ceiling. The legislature must have considered this each time it set or changed any law regarding the minimum wage. In the case of Louisville Metro, the legislature granted that city extraordinary powers. Kentucky has refrained from prohibiting any city from increasing its minimum wage through an ordinance—much less a first-class city, which it expressly deemed needed even

greater powers than those afforded to other cities.

In conclusion, the Commonwealth of Kentucky has granted Louisville Metro broad powers. Before Kentucky passed any minimum wage law, the federal government passed a minimum wage law. The federal law covers many more workers than Kentucky law and specifically allows for a higher minimum wage set by states or municipalities. Knowing that federal laws allowed a higher municipal wage, the Kentucky legislature refrained from placing any restrictions regarding minimum wages in its broad grant of powers to Louisville Metro. The Kentucky legislature passed a statute (KRS 337.395) specifically providing for the possibility of a higher minimum wage when it passed the state minimum wage. This statute proves that the legislature intended that a municipality's higher minimum wage could exist within the Kentucky statutory scheme. The Louisville Metro ordinance on the minimum wage is totally compatible with federal and state laws and within the power delegated to Louisville Metro by the legislature.

For the foregoing reasons, I would affirm the Jefferson Circuit Court and hold that the Louisville Metro Government's minimum wage comports with the law.