# Trinity Temple Charities, Inc., et al.
## v. City of Louisville et al.

May 29, 1945.

Peter, Heyburn & Marshall, Gavin H. Cochran, and D. E. Hankins for appellants.

Lewis Carroll for appellees.

OPINION OF THE COURT BY JUDGE REES—Affirming.

The City of Louisville attempted in 1943 to assess for taxation certain real estate in the name of Trinity Temple Charities, Inc., a corporation organized under Chapter 273 of the Kentucky Revised Statutes which provides for the organization of corporations having no capital stock for religious, educational or charitable purposes from which no private pecuniary profit is derived. Thereupon Trinity Temple Charities, Inc., brought this action against the city and its taxing authorities to enjoin the collection of the taxes. It alleged in its petition that the property was conveyed to it on September 11, 1942, by the Union Methodist Episcopal Church South; that it was the owner in fee simple of the property; and

that the entire net rents, issues, and profits thereof had been used solely for the charitable and educational purposes set forth in its charter by reason whereof the property was exempt from taxation under the provisions of section 170 of the Kentucky Constitution. In paragraph 1 of its answer the city denied that the plaintiff was the owner in fee of the property described in its petition, and alleged that it had only the legal title thereto and was not the equitable and beneficial owner thereof. In paragraph 2 the city alleged in the alternative that the property was "either owned by the plaintiff and leased for income, as plaintiff avers, or it has been, to all intents and purposes, sold to the alleged lessee (although plaintiff retains the legal title thereto), as defendants believe and state, but that due to the disguised character of the transaction defendants cannot and do not know with certainty what is the true state of facts." A demurrer to that part of the answer which pleaded that income producing real estate of charitable and educational institutions is not exempt from taxation under section 170 of the Constitution was sustained. A similar ruling of the court in a companion case was affirmed by this court in City of Louisville v. Presbyterian Orphans Home Society, 299 Ky. 566, 186 S. W. 2d 194. The City of Louisville filed an amended answer and cross-petition making F. W. Drybrough, the alleged lessee of the property, a party, and the case proceeded on the issue made by the pleadings; that is, was the lease to Drybrough, in substance, a sale which made the property taxable to him. The case was submitted on the pleadings, proof, and exhibits, and the chancellor, assuming that Trinity Temple Charities, Inc., is an institution of purely public charity within the meaning of section 170 of the Constitution, adjudged that the instrument dated August 31, 1942, designated on its face as a lease and purporting to lease to F. W. Drybrough the real estate then owned by Trinity Temple Charities, Inc., was actually a contract of sale which vested Drybrough with the equitable title to the real estate, and that Trinity Temple Charities, Inc., was not the actual owner thereof on July 1, 1943. The injunction prayed for by the plaintiff was denied, and its petition was dismissed. The plaintiff, Trinity Temple Charities, Inc., and the cross-defendant, F. W. Drybrough, have appealed. The city has never sought to reassess the property against Drybrough, but any tech-

nical irregularity in the proceedings has been waived by appellants, since all parties desire that the case be decided on its merits.

In order to understand the question presented for decision, a statement of facts forming the background of the present controversy is necessary. The property sought to be assessed for taxation is a lot 147 ft. x 180 ft. fronting on Broadway at Sixth street in Louisville. Prior to 1940 the lot was owned by Union Methodist Episcopal Church South, and on it was a church building. In 1940 the congregations of this church and the Trinity Temple Methodist Church, which had its church building at Third and Guthrie streets in Louisville, merged, and the use of the building at Broadway and Sixth street as a place of religious worship ceased. On September 24, 1940, the Quarterly Conference of the Methodist Episcopal Church South, apparently the governing body of the church, adopted a resolution authorizing the board of trustees of the Trinity Temple Methodist Church to sell and convey the property and to divide the net proceeds equally between the Trinity Temple Methodist Church and the City Missionary Society of the Methodist Church in Louisville. The board of trustees placed the property in the hands of John R. Carpenter, a real estate agent, for sale. No sale was made, and on June 24, 1942, F. W. Drybrough made an offer through the real estate agent to lease the property for a term of 20 years, with an option to purchase it at any time during the term of the lease. In his proposal he offered to pay $10,000 in cash upon the execution of the lease and to pay a monthly rental of $187.50 during the first year. During the second year the monthly rental was to be $529.51, and during each of the succeeding years there was to be a slight decrease until the twentieth year when the monthly rental would amount to $318.75, or $3,825 for the year. During the first year of the lease Drybrough was to have the option of buying the property at the price of $75,000, and starting the second year this $75,000 option price should decrease $347.22 per month until the end of the tenth year, at which time the option purchase price should amount to $37,500. From the eleventh to the twentieth year the option purchase price should be reduced at the rate of $312.50 a month for the time elapsed. The eighth item of the proposal read: ''Whereas, it is my understanding

that this property will remain tax exempt during the term of this lease as far as the City and State and County taxes are concerned, it being agreed that lessor shall apply the rental proceeds to the uses permitted under existing Ky. Statutes which now permits tax exemption. I agree that if there is a change in the existing laws whereby it would become necessary for you to pay these taxes, then in that event one-twelfth (1-12) of the annual taxes shall be added to the monthly rental and paid by me."

By the tenth item the lessor was to pay a commission of $3,050 when the lease was executed. The proposal contained a provision permitting Drybrough to wreck the old church building. At a meeting of the board of trustees on June 26, 1942, Drybrough's proposal, with minor modifications, was accepted subject to the approval of the Quarterly Conference. On July 8, 1942, the Quarterly Conference approved the resolution of the board of trustees accepting, with modifications, the proposal of Drybrough, and authorized the trustees to conclude the proposed lease on the terms and conditions indicated in the offer as amended. On August 18, 1942, Trinity Temple Charities, Inc., was organized under Chapter 273 of the Kentucky Revised Statutes. The incorporators were the district superintendent of the Louisville District of the Louisville Conference of the Methodist Church, four members of the Trinity Temple Methodist Church, and two members of the board of managers of the Louisville City Mission and Church Extension Society of the Methodist Episcopal Church. On September 11, 1942, the board of trustees of the Union Methodist Episcopal Church South conveyed to Trinity Temple Charities, Inc., the lot at Broadway and Sixth street in Louisville for a recited consideration of $10,000 cash and the further sum of $75,000, for which the grantee executed two notes, one for $37,500 payable in installments to Trinity Temple Methodist Church, and one for a like amount payable in installments to the Louisville City Mission and Church Extension Society of the Methodist Church. On the same day Trinity Temple Charities, Inc., executed a mortgage on the property to the payees of the two notes to secure their payment. An instrument designated a lease, containing the provisions of the proposal of F. W. Drybrough, dated June 24, 1942, as later modified, was signed by

Trinity Temple Charities, Inc., and Drybrough. The instrument bears the date of August 31, 1942, but it refers to the mortgage of September 11, 1942, and subordinates it to the lease. The installments payable on the two notes secured by the mortgage correspond to the monthly rentals. The instrument contains a provision not in the proposal of June 24, 1942, permitting Drybrough, if not in default, to cancel the lease on the fourteenth day of. any month during the second or any subsequent year of the term, and also a provision permitting him to assign his rights thereunder to any person, firm or corporation. The chancellor found that the instrument designated a lease was, in substance, a contract of sale, and in a written opinion, after setting forth its salient terms, said:

"With a few exceptions all of the foregoing enumerated characteristics of the contract are also characteristics of an ordinary deed with vendor's lien retained or of a title bond. This property is located at Sixth and Broadway in Louisville, and at the time the contract was executed a large church was located upon it. Upon the payment of a sum provided for in the contract tenant was permitted to take immediate possession and begin the work of wrecking and removing the rather large edifice. At this time of course the premises were not in shape for use as a parking lot, which is its present use. In the contract the plaintiff gives a general warranty that it is owner in fee simple of the premises and has full power to make a contract. The defendant is given the right to assign the lease and if all the payments are made as called for by the contract, the tenant may obtain a formal deed without further payment of any nature.

"The City has shown by an analysis of the amounts to be paid under the contract that the purchase price was $85,000, the payment of which consisted of the down payment of $10,000, and that the balance of principal and interest due is amortized over a period of twenty years. Defendants have demonstrated that the so-called rental for the first year was made up of $10,000 cash down payment on purchase price, plus 3% interest for one year on the then unpaid principal balance of $75,-000, and it has further shown that at any time Drybrough might exercise his option to obtain a deed to the prop-

erty by the payment of unpaid principal then due, plus interest.

"The plaintiff has stressed the fact that under the terms of the lease Drybrough had the right at any time after the first year to cancel the contract upon proper notice without further liability to him and has insisted that this feature of the agreement indicates that the agreement was in fact a lease and not a conveyance. It does not seem to me that this right is an outstanding characteristic of a lease or that it marks a lease any more than it would any contract where the parties have agreed that a contract may be cancelled at the option of one of the parties. The question of mutuality of contract is not involved here and has not been presented by the pleading, and I know of no rule of law that precludes the insertion of the right to cancel an agreement to convey or denies a grantor the right to give to the grantee power to cancel the agreement and reconvey the property in the event he decides he does not want it if the consideration is sufficient. In cases where there has been a substantial down payment, as in this case, there is little reason for the grantee to cancel the contract because he would be the one who would suffer thereby. In any event I do not believe that the right to cancel is proof that the contract is a lease."

We think that the chancellor's construction of the contract, looking at it as a whole, is correct, but if any doubt in this respect exists it is resolved by a consideration of the facts forming the background of the transaction. Looking at the instrument alone, the payment of $10,000 upon the execution of the contract, the right of Drybrough to demolish and remove the building on the lot, and to erect thereon a building or buildings suitable for business purposes, his right to assign the contract, his agreement, if the landlord is required to pay any taxes on the property, to pay the landlord as additional rent a sum of money equal to such taxes, and the fact that the total monthly rentals equal the agreed purchase price, with interest, indicate most persuasively a sale rather than a lease. In addition to the foregoing features of the contract, the trustees of the Union Methodist Episcopal Church South paid to the real estate agent a commission due on a sale of real estate for $85,000 under the schedule of commissions and fees established

by the Louisville Real Estate Board. It appears that commissions for obtaining lease contracts are materially less. Appellants cite many cases in support of their contention that the instrument of August 31, 1942, is a lease with an option to purchase and not a contract of sale, but in none of them did the payments of rent equal the option purchase price and in all of them other features of the present case were absent. The instrument before us is more than a lease with an option to purchase. The so-called monthly rentals are actually installments of purchase money. The contract, when considered in the light of the negotiations which preceded its execution, and the methods of procedure adopted show clearly that the owner intended to sell and Drybrough intended to purchase the property. He became the owner of the equitable title with absolute assurance of obtaining the legal title upon performance of conditions subsequent to the execution of the contract. As said by the chancellor, the fact that Drybrough had the right at any time after the first year to cancel the contract upon proper notice without further liability on his part does not alter the character of the transaction. Nor can the character of the transaction be changed by any nomenclature or device employed by the parties whether innocently or with design to have it appear to be something other than what, in fact, it was. The purpose, rather than the name given a contract by the parties, controls, and the court will give effect to the real and dominant intention of the parties when definitely ascertained. Leslie County v. Maggard, 212 Ky. 354, 279 S. W. 335; Hervey v. Rhode Island Locomotive Works, 93 U. S. 664, 23 L. Ed. 1003; Samson Tire & Rubber Co. v. Eggleston, 5 Cir., 45 F. 2d 502, certiorari denied, 284 U. S. 620, 52 S. Ct. 9, 76 L. Ed. 529. It is obvious that throughout the negotiations the parties had in mind the question of taxation, and that the procedure adopted was a device to render the property tax exempt. We do not use the term in an invidious sense. There can be no just criticism of an honest effort to obtain tax exemption.

Regardless of the rights of the parties as between themselves, we are only concerned here with the question of intention as it bears upon the right to subject the property to taxation. The delegates to the Constitutional Convention were careful, in proposing section

170 for adoption, to limit the exemption privileges, and those privileges should not be extended beyond the clear import of the constitutional provisions on the subject. As said in Commonwealth v. Trustees of Hamilton College, 125 Ky. 329, 101 S. W. 405, 406, "* * * the spirit in which this exemption from the burdens of taxation is allowed cannot be trifled with or evaded by any scheme or device that might defeat the purpose of the exemption, * * *." The abuses that would result if exemption from taxation is upheld in the present case are readily apparent. Property could be leased for a term of 50 years or longer with an option to purchase, and, with substantially all of the purchase money, denominated rentals, paid upon the execution of the contract with nominal payments thereafter, tax exemption could be enjoyed indefinitely.

In view of our conclusion that the property in question is taxable for the reasons heretofore indicated, it is unnecessary to consider appellees' contention that it is taxable in any event since property owned by a church and leased for income is not exempt from taxation under section 170 of the Constitution, and the instrument of August 31, 1942, even if a lease, was executed indirectly by the church through an alter ego.

Judgment affirmed.