GREATER LOUISVILLE FIRST FEDER-AL SAVINGS AND LOAN ASSOCIA-TION, Appellant,

v.

J. Scott ETZLER, Rebecca Etzler, and Suzanne Coleman, Appellees.

Court of Appeals of Kentucky.

Opinion Rendered Aug. 26, 1983.

Discretionary Review Denied by Supreme Court Nov. 16, 1983.

George E. Dudley, Stephen R. Schmidt, Phillip A. Brooks, Brown, Todd & Heyburn, Paul M. Baker, Olson, Baker & Salyers, Louisville, for appellant.

William A. Miller, Sr., Roger M. Prizant, Michael Maple, Charles Hebel, Jr., J. David Borders, Joseph Wahl, Jr., Tony Rives, Louisville, for appellees.

Before HOWARD, MILLER and REYNOLDS, JJ.

HOWARD, Judge.

The appellant appeals from a summary judgment granted appellees by the trial court in a foreclosure action brought by appellant due to appellees' alleged violation of a due-on-sale clause in their mortgage.

In 1979, appellee J. Scott Etzler ("Etzler") borrowed $44,500.00 from appellant ("Greater Louisville") to purchase a house at 10502 Burns Court in Louisville. Etzler executed a promissory note and mortgage to Greater Louisville which included the following "due-on-sale" clause:

17. Transfer of the Property; Assumption. If all or any part of the Property or an interest therein is sold or transferred by Borrower without Lender's prior written consent, excluding (a) the creation of a lien or encumbrance subordinate to this Mortgage, (b) the creation of a purchase money security interest for household appliances, (c) a transfer by devise, descent or by operation of law upon the death of a joint tenant or (d) the grant of any leasehold interest of three years or less not containing an option to purchase, Lender may, at Lender's option, declare all the sums secured by this Mortgage to be immediately due and payable. Lender shall have waived such option to accelerate if, prior to the sale or transfer, Lender and the person to whom the Property is to be sold or transferred reach agreement in writing that the credit of such person is satisfactory to Lender and that the interest payable on the sums secured by this Mortgage shall be at such rate as Lender shall request. If Lender has waived the option to accelerate provided in this paragraph 17, and if Borrower's successor in interest has executed a written assumption agreement accepted in writing by Lender, Lender shall release Borrower from all obligations under this Mortgage and Note.

On January 16, 1981, Etzler and his wife entered into a deal with appellee Suzanne Coleman ("Coleman") whereby the Etzlers and Coleman would exchange residences under the "Metro Option Loan Plan." This plan, introduced in Louisville in 1980 by a group of real-estate attorneys, was formulated to take "options to purchase" out from under the mortgage clauses requiring that lenders be notified of sales. Under such option plans, the new buyer takes out an option to purchase which may be exercised within an agreed period of time. The plan is that by characterizing this as an option instead of a sale, the would-be seller is not required to inform the lender holding a mortgage on the property and the lender therefore cannot exercise its rights under the "due-on-sale" clause, namely accelerating payments or requiring the new purchaser to buy at a higher interest rate.

The Etzler/Coleman contract provided that Coleman would pay the Etzlers $62,000 as follows:

Approximately $18,000.00 cash including the deposit; balance if any, of approximately $44,000.00 to be financed by purchaser on Metro Option loan plan for a term of approximately 28 years, with interest at the rate of 10% per annum or by assumption of existing Mortgage as follows: Monthly payment to be approximately $443.00 P.I.T. This is Metro Option ... monthly payment to cover monthly payment on Etzlers' existing loan at Greater Louisville....

On February 27, 1981, Coleman paid the Etzlers $17,973.42 and the parties executed a "Metro Real Estate Option" and an

"Agreement for Delivery of Deed" which provided that an attorney would hold the deed to the property in escrow until Coleman had paid the entire consideration required by the "Metro Option." The "Metro Option" plan provided that it was to be renewed automatically each year for twenty-eight years if the payments are made. On that same day the Etzlers purchased Coleman's house and executed a mortgage on it to Future Federal Savings & Loan Association.

The parties did not inform Greater Louisville of their deal but did record the "Metro Option." When a number of these options began appearing in real estate transactions in Louisville, Greater Louisville had the records searched and found that the Etzlers and Coleman had executed such an option. On November 12, 1981, Greater Louisville notified the Etzlers that the "Metro Option" violated the clause in their mortgage set out above and requested a proper assumption. No action was taken for Coleman to assume the mortgage and on December 14, 1981, Greater Louisville declared the full amount plus interest immediately due pursuant to their acceleration clause. This amount was not paid.

After notice of acceleration, on December 18, 1981, the Etzlers and Coleman executed and recorded a "Release" of the "Metro Option." On December 22, 1981, the parties executed a one-year "Lease" and a one-year "Option" on the property. The Etzlers retained the $17,973.42 paid to them by Coleman as consideration for the new option to purchase.

On February 24, 1982, Greater Louisville filed a foreclosure suit against the Etzlers and Coleman. On January 12, 1983, the trial court granted the appellees' motion for summary judgment and dismissed Greater Louisville's complaint with prejudice. It is from this order that Greater Louisville appeals. We reverse.

Greater Louisville argues that the "Metro Option" transaction was a transfer of an interest in violation of their due-on-sale clause and that the trial court therefore erred in granting summary judgment to the Etzlers and Coleman.[1] However, Etzler and Coleman contend that the transaction between them did not involve a transfer of interest and that even if some equitable interest was transferred it was only a "lien or encumbrance subordinate to the mortgage" and was therefore excluded from the due-on-sale clause.

A true option, of course, transfers nothing but a mere right to acquire an interest, not the ownership of nor any interest in the property itself. 77 Am.Jur.2d *Vendor and Purchaser* § 27 (1975). In support of its contention that the "Metro Option" transaction was not a true option, Greater Louisville correctly states that the proper construction of a contract is not dependent upon the name given it but upon "the entire body of the contract and its legal effect as a whole." *Leslie County v. Maggard,* 212 Ky. 354, 279 S.W. 335 (1926). However, when considering options such as the one here, whether the parties to the instrument regard it as an option or as a contract of purchase and sale is also of significance in determining the character of the agreement. 77 Am.Jur.2d, *Vendor and Purchaser* § 28 (1975).

Although there is some Kentucky law relative to options and sales in general, this particular situation involving these "Metro Options" and the due-on-sale clause is one of first impression for our Courts. We do, however, find some guidance in opinions from our sister states. In *Smith v. Frontier Federal Savings and Loan Association,* 649 P.2d 536 (Okl.1982), the Supreme Court of Oklahoma considered an identical due-on-sale clause and found that a contract for deed by the property owners passed equitable title to the grantees "even though the landowners purported to retain title pending payment in full." The Court decided that since the effect of the contract was to actually transfer an interest in the proper-

1. The validity of such due-on-sale clauses was upheld by the United States Supreme Court in *Fidelity Federal Savings and Loan Association,* et al. v. Reginald de la Cuesta, et al., 458 U.S. 141, 102 S.Ct. 3014, 73 L.Ed.2d 664 (1982).

ty, then the due-on-sale clause was triggered making the loan balance due and owing. There, as in the case at bar, the "sellers" were paid for their equity in the property and the "buyer" took possession of the property, made the monthly payments and paid the taxes. Though in *Smith* the contract for deed was referred to as a mortgage and the contract here was called an option, the result is the same.

■ The Etzlers and Coleman argue that, even if an interest was transferred, the transaction was excluded from the due-on-sale clause under part (a) of that clause which excludes "the creation of a lien or encumbrance subordinate to this Mortgage." We agree with the reasoning of the Court in *Smith, supra,* which, when presented with the same argument, stated:

> Clearly, the parties (the bank and the property owner) must have contemplated that this exclusion would apply to an encumbrance given by the Smiths, such as a second mortgage to finance remodeling. It is equally clear that the parties did not intend this exclusion to apply to a transaction in which the Smiths *sold* the property to a third party . . . . (Emphasis added.)

It is equally as clear in this case that when the Etzlers and Greater Louisville executed the promissory note and mortgage containing the due-on-sale clause they did not intend to exclude transactions such as the "Metro Option." To the contrary, such transfers of interest are precisely what the clause seeks to regulate.

Both parties claim that the Kentucky case of *Sebastian v. Floyd,* Ky., 585 S.W.2d 381 (1979), is supportive of their arguments. In *Sebastian,* our Supreme Court held that a seller cannot enforce an installment land sale contract that provides for forfeiture of all payments upon the purchaser's default. The only real relevance the *Sebastian* language has to the case at bar is the Court's discussion of conditional land contracts. There they found that a vendor under such a contract held a lien on the property much like a mortgage and could therefore be referred to as an "equitable mortgagee."

The Etzlers claim, then, that their transaction transferred no greater interest than the one in *Sebastian* and that they, too, are "simply equitable mortgagees, financing Mrs. Coleman." In the *Smith* case, that is precisely what the Oklahoma Court said when it found that the property owner/sellers had become mortgagees "retaining only a security interest . . . and that is the type of situation in which the due-on-sale clause may be invoked."

The clearest evidence of what the Etzler/Coleman transaction actually was can be found in an explanation given by one of the originators of the "Metro Option:"

> We must convince the lender that the buyer is not entering into a sale in which the title of the property is transferred or the title is conveyed, while at the same time we are going to protect the buyer's interest in the property. In other words, we are not going to have a 'sale' as far as the lender is concerned but we are going to have a 'sale' as far as the seller, buyer, real-estate agents and the IRS are concerned. Roger W. Prizant, *The Courier-Journal,* July 4, 1981.

In *Trinity Temple Charities v. City of Louisville,* 300 Ky. 172, 188 S.W.2d 91 (1945), our Court found that, for the purposes of property taxation, a contract purporting to be a lease was actually a contract of sale and said:

> Nor can the character of the transaction be changed by any nomenclature or device employed by the parties whether innocently or with design to have it appear to be something other than what, in fact, it was. The purpose, rather than the name given a contract by the parties, controls. . . .

In other words, if something walks like a duck, acts like a duck and quacks like a duck, it's a duck!

■ It is evident from the case record that the Etzlers and Coleman acted, for all practical purposes, like sellers and buyers of the property. The Etzlers, as sellers, were released from any tax responsibility, maintenance, payments and received from Cole-

man an amount equal to the equity they had in the property. Coleman, on the other hand, agreed to pay for the taxes and other expenses on the property and even wrote Greater Louisville a letter informing them of her intent to sell the property at some time in the future. The transaction was a transfer of an interest in property and, no matter what it is called, it has triggered the due-on-sale clause.

The trial court therefore erred in awarding summary judgment to the appellees and we reverse that judgment for further proceedings consistent with this opinion.

All concur.