RENDERED: MAY 29, 2026; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2025-CA-0983-MR

CLOVER CREEK SOLAR PROJECT,
LLC D/B/A NEW FRONTIERS
SOLAR PARK; BETTY BURKE;
BETTYE SUE SMALL; GLENDA R.
BURKE, AS TRUSTEE OF THE LYLE
H. AND AUDREY S. REBURN
IRREVOCABLE FAMILY TRUST;
JAMES D. MILLER, JR.; JLB REAL
ESTATE, LLC; JOSEPH L. BURKE III;
KEITH P. SMALL; LAURA M.
SKILLMAN; PATSY L. WILLIAMS,
AS TRUSTEE OF THE WILLIAMS
REVOCABLE LIVING TRUST
DATED SEPTEMBER 20, 2006; PAUL
E. WILLIAMS, AS TRUSTEE OF THE
WILLIAMS REVOCABLE LIVING
TRUST DATED SEPTEMBER 20,
2006; AND THOMAS M. SKILLMAN                                    APPELLANTS


APPEAL FROM BRECKINRIDGE CIRCUIT COURT
v.            HONORABLE KENNETH H. GOFF, II, JUDGE
ACTION NO. 25-CI-00083


BRECKINRIDGE COUNTY FISCAL
COURT                                                           APPELLEE

OPINION
REVERSING AND REMANDING

\*\* \*\* \*\* \*\* \*\*

BEFORE:  CALDWELL, CETRULO, AND EASTON, JUDGES.

CETRULO, JUDGE: Clover Creek Solar Project LLC d/b/a New Frontiers Solar Project ("Clover Creek"), along with the other named landowners ("Landowners"),[1] appeal the July 2025 order of the Breckinridge Circuit Court denying their motion seeking declarations that (a) the Breckinridge County Fiscal Court lacked authority to adopt certain ordinances regulating the development of Clover Creek's Solar Project, a solar-powered electric generation and electric transmission facility; (b) the ordinances were invalid planning and zoning regulations under KRS[2] Chapter 100; and (c) the ordinances were not entitled to primacy over KRS Chapter 278 requirements, and therefore, did not apply to Clover Creek's solar project.  After a thorough review of the record, we reverse and remand for additional proceedings.

---

[1] The Landowners are JLB Real Estate, LLC, Glenda R. Burke as Trustee of the Lyle H. and Audrey S. Reburn Irrevocable Family Trust, Paul E. Williams and Patsy L. Williams as Trustees of the Williams Revocable Living Trust dated September 20, 2006, Joseph L. Burke III, Betty Burke, Thomas M. Skillman, Laura M. Skillman, Keith P. Small, Bettye Sue Small, and James D. Miller, Jr.

[2] Kentucky Revised Statutes.

# BACKGROUND

Clover Creek sought to develop a ground-mounted photovoltaic electric generating facility ("Project") on 1,100 acres of land in Breckinridge County, Kentucky. In furtherance of this development effort, Clover Creek entered into land use agreements with various Landowners securing the rights to construct and operate the Project on their properties. Once constructed, the Project would have the capacity to generate approximately 100 megawatts of renewable power and the capability to power approximately 20,000 homes.

## A. State Regulation of MEGFs

Based on the Project's capacity to generate over ten megawatts of power and its objective to sell electricity into the wholesale market, it qualifies as a Merchant Electric Generating Facility ("MEGF") and is subject to Kentucky's state regulatory scheme, including approval by the Kentucky State Board on Electric Generation and Transmission Siting ("Siting Board"),[3] under KRS 278.700 *et seq.*[4] Before construction of an MEGF may begin, a project's proponent must apply for and obtain a construction certificate from the Siting Board. KRS 278.704(1). An application requires extensive information related to

---

[3] The Siting Board is headquartered at the Kentucky Public Service Commission, the state regulator of utilities.

[4] The General Assembly first enacted KRS 278.700 *et seq.* in 2002 with subsequent amendments occurring in 2014, 2023, and most recently in 2026.

an MEGF project and its effects on the surrounding region, including an economic impact analysis, property value impact studies, a site assessment report (as specified in KRS 278.708), and a decommissioning plan. *See* KRS 278.706. Additionally, the state regulatory scheme takes local government planning and zoning regulations into account by requiring MEGF projects to comply with local rules when applicable. *See, e.g.*, KRS 278.704, .706, .710, .718.

**B. The 2022 Ordinance**

In June 2022, Breckinridge County Fiscal Court ("Fiscal Court") enacted Ordinance No. 2022-0321 ("2022 Ordinance"). The 2022 Ordinance did not cite any statutory authority for its enactment, yet self-identified as "An Ordinance Regulating Solar Energy Systems and Solar Panel Installation." Within its provisions, the ordinance specified three levels of Solar Energy Systems ("SES") "[f]or the purposes of these zoning regulations," permitting Level 1 SES in "all zoning districts" and considering Levels 2 and 3 as "conditional use[s] in all Agricultural or Commercial/Heavy Industrial Zones." Level 3 SES were subject to additional conditions, such as Fiscal Court approval of a site plan and compliance with the ordinance's setback and decommissioning requirements. The 2022 Ordinance also imposed screening, height, signage, and lighting restrictions.

Clover Creek disputed the validity of the 2022 Ordinance as the Fiscal Court did not comply with the provisions of KRS Chapter 100. For instance,

Clover Creek argued that Breckinridge County was not a jurisdiction with an established comprehensive plan, a planning commission, or board of adjustment. Without adhering to the statutory prerequisites of KRS Chapter 100, Clover Creek argued that the Fiscal Court lacked authority to enact planning and zoning regulations.

In November 2024, Clover Creek submitted the Project's application for a construction certificate to the Siting Board. Despite its objections to the 2022 Ordinance, Clover Creek incorporated those requirements into the Project's design to ensure compliance.

### C. The 2025 Ordinance

In February 2025, while Clover Creek's application was still pending before the Siting Board, the Fiscal Court adopted Ordinance No. 2025-0121 ("2025 Ordinance"), that repealed and replaced the 2022 Ordinance. Compared to its predecessor, the 2025 Ordinance imposed a more demanding regulatory framework. For instance, under the 2025 Ordinance, a solar project must comply with more stringent setback and screening requirements. Additionally, the 2025 Ordinance delineated standards for lighting restrictions, decommissioning plans, airport approach zone compliance, and road maintenance. Before starting construction, the 2025 Ordinance required, among other things, submission of a site plan, detailing conformity with each of its standards, to the Fiscal Court for approval.

Whereas the 2022 Ordinance cited no statutory authority for its enactment, this new Ordinance declared to be enacted under "the provisions of home rule" of KRS Chapters 67, 67A, 67C, and 82, and cited two provisions under KRS 67.083 as sources granting the Fiscal Court "authority to undertake all necessary governmental actions for the welfare of the county." In particular, the 2025 Ordinance relied on KRS 67.083(3)(h), authorizing regulation for the "[c]onservation, preservation and enhancement of natural resources including soils, water, air, vegetation, and wildlife[,]" and KRS 67.083(3)(m), authorizing "[r]egulation of commerce for the protection and convenience of the public[.]" Of note, the 2025 Ordinance did not identify KRS 67.083(3)(k), which permits "[p]lanning, zoning, and subdivision control according to the provisions of KRS Chapter 100[,]" as a basis of authority. Instead, the 2025 Ordinance went in the opposite direction by explicitly declaring that it was "not intended to be a planning or zoning regulation[.]" Finally, the 2025 Ordinance relied on KRS 278.718 to assert its primacy over any conflicting state provisions.

By its own terms, the 2025 Ordinance applied to large-scale SES projects *with applications pending* before the Siting Board.[5] Therefore, it appeared

---

[5] A ground-mounted SES "with a footprint of more than forty (40) acres" qualifies as large scale, and "also includes any non-exempt SES that, irrespective of footprint size or configuration, constitutes a Merchant Electric Generating Facility as defined by the terms of KRS 278.700(2) and is otherwise subject to review and approval by the [Siting Board]." Furthermore, the 2025 Ordinance only applied to large-scale ground-mounted SES that had not begun physical construction as of its effective date on February 17, 2025. The 2025 Ordinance defined

that Clover Creek's Project, which qualified as a large-scale SES under the 2025 Ordinance, would be subject to its provisions. With the Project's application still pending before the Siting Board, Clover Creek and the Landowners filed suit for a declaration of rights with the Breckinridge Circuit Court, seeking judgment that both the 2022 and 2025 Ordinances were invalid planning and zoning regulations under KRS Chapter 100 and not entitled to primacy over the requirements set forth in KRS Chapter 278.

### D. The Certificate

On May 2, 2025, the Siting Board granted Clover Creek the applied for construction certificate ("Certificate"). The Certificate is an extensive order, comprising approximately 50 plus pages of discussion and appendices, wherein the Siting Board reviews the evidence supporting its decision, the relevant statutes under KRS Chapter 278, and the parameters governing the Project's construction, operation, and decommissioning.

Regarding the Project's compliance with local ordinances, the Certificate recognized that the 2025 Ordinance had repealed and replaced the 2022 Ordinance, but since the 2025 Ordinance was not in effect at the time Clover Creek

---

"physical construction" as "[t]he excavation or movement of earth, erection of forms or structures, or similar activities undertaken in the construction of an SES Facility. *This term does not include any activity or construction undertaken prior to the issuance of all required certificates, approvals and permits, if any, as required under KRS Chapter 278 and other applicable statutes*." (Emphasis added.)

submitted its application in November 2024, the Siting Board would not consider it. As such, the Siting Board determined that there was no locally established setback requirement applicable to the Project and required adherence to the *state's* statutory scheme under KRS Chapter 278. Under the state framework, a setback of 2,000 feet is required from any residential neighborhood, school, hospital, or nursing home facility, KRS 278.704(2), but the Siting Board may authorize deviations from this default provision, KRS 278.704(4), and did in fact do so in this case, granting Clover Creek's request for modified setbacks.[6]

### E. Circuit Court Proceedings

After issuance of the Certificate by the Siting Board, Clover Creek sought a ruling on its declaratory judgment action. At issue were significant conflicting requirements between the 2025 Ordinance and the Certificate. For example, the 2025 Ordinance mandated setbacks of no less than 1,000 feet between the SES footprint and any non-participating property line and any right-of-way for public roads or rail-line, and no less than 2,000 feet from any residential building, church, school, hospital or any incorporated city limit. The Certificate, in

---

[6] The Certificate noted that the Project would be located within 2,000 feet of two residential neighborhoods. Along with imposing mitigation measures, the Siting Board ordered that "Clover Creek shall not place solar panels or string inverters, if used, closer than 800 feet from any residence, church, or school, 100 feet from non-participating adjoining parcels and 50 feet from adjacent roadways. Clover Creek shall not place a central inverter, and if used energy storage systems, closer than 450 feet from any adjacent residences, church, or school."

contrast, specified a setback of 450 feet and required solar panels to be placed no closer than 800 feet from any residence, church, or school. To comply with the 2025 Ordinance setbacks, the Project would need to expand its footprint, but the Certificate specifically prohibited the expansion or addition of parcels without additional approval from the Siting Board. Clover Creek also asserted that compliance with the screening and decommissioning requirements in the 2025 Ordinance would impose significant financial burdens on the Project.

Following briefing and oral arguments, the circuit court denied Clover Creek's motion for declaratory judgment. In its order entered July 7, 2025, the court concluded that the 2025 Ordinance was not a zoning ordinance, as it did "not regulate the purpose or object of any use of property, nor . . . confine any classes of buildings or uses to certain localities."[7] To the contrary, the court observed that the 2025 Ordinance permitted the location of large-scale SES anywhere within Breckinridge County conditioned only on compliance with its provisions.

The court also concluded that the absence of statutorily required elements[8] in the 2025 Ordinance further distinguished it from being categorized as

---

[7] In reaching this conclusion, the court drew from Kentucky case law including *Seligman v. Belknap*, 155 S.W.2d 735, 736 (Ky. 1941), providing that zoning "relates to the regulation of the use of property," and *Selligman v. Von Allmen Brothers*, 179 S.W.2d 207, 209 (Ky. 1944), noting that "[t]he theory of zoning is to foster improvement by confining certain classes of buildings and uses to certain localities[.]"

[8] KRS 100.203 specifies the contents of a zoning regulation, which include "[a] text, which shall list the types of zones which may be used, and the regulations which may be imposed in each

a zoning ordinance. Instead, the circuit court held that the 2025 Ordinance was a valid exercise of the Fiscal Court's general police power to regulate commerce and protect natural resources under KRS 67.083 and was rationally related to those objectives. The court further construed KRS 278.704 and KRS 278.718 to allow for a local legislative body to regulate MEGFs by local ordinance. In sum, the court declared that the 2025 Ordinance was a valid exercise of the Fiscal Court's powers, enjoyed primacy over the Siting Board's Certificate, and must be followed should Clover Creek wish to proceed with construction. As the court upheld the validity of the 2025 Ordinance, it declared any controversy regarding the 2022 Ordinance moot.

## STANDARD OF REVIEW

The issue on appeal is whether the circuit court erred in its determination that the 2022 and 2025 Ordinances were a valid exercise of the Fiscal Court's power under home rule provisions and, therefore, entitled to primacy over the provisions of KRS Chapter 278. As both parties acknowledge, the issue is a pure question of law, which we review *de novo*. *Carroll v. Reed*, 425 S.W.3d 921, 924 (Ky. App. 2014) (citing *Commonwealth v. Jameson*, 215 S.W.3d 9, 15 (Ky. 2006)) ("[B]ecause the case involves the interpretation and application

---

zone," KRS 100.203(1), and "[a] map, which shall show the boundaries of the area which is to be zoned, and the boundaries of each zone[,]" KRS 100.203(3).

-10-

of a county ordinance and relevant statutes, the issue is a question of law that must be reviewed *de novo*.").

## ANALYSIS

Our General Assembly consolidated Kentucky's energy infrastructure siting authority into a single state proceeding, set forth in KRS 278.700 through KRS 278.718. While the decision to issue a construction certificate rests with the Siting Board, the state statutory framework provides *some* deference and consideration of local land-use authority when regulating MEGFs. The question is how much.

We begin our analysis by quoting Justice Cunningham's astute observation in *Kentucky Restaurant Association v. Louisville/Jefferson County Metro Government*:

> Perhaps no state in the Union holds a stronger affection for local government than does the Commonwealth of Kentucky. . . . Writer Robert M. Ireland has summed it up best. "Although not alone in their refusal to tamper with their counties, Kentuckians arguably attach more significance to these constitutional creatures than any other Americans. In Kentucky, for better or worse, counties are truly little kingdoms."

501 S.W.3d 425, 426 (Ky. 2016) (quoting ROBERT M. IRELAND, LITTLE KINGDOMS p. 150 (University Press of Kentucky 1977)). Once again, we are confronted with the "historic clash between the competing authority" of local and state government. *Id.*

We hold that the state regulatory framework in KRS 278.700 *et seq.* grants priority to local regulations established by planning and zoning commissions. In the case before us, however, the 2025 Ordinance was flawed from its inception. At its core, both the 2022 and the 2025 Ordinances are zoning ordinances that regulate land-use, despite the latter attempts to classify the 2025 Ordinance as one regulating conservation and commerce. Lack of compliance with the planning and zoning procedures mandated by KRS Chapter 100 is undisputed. As the Fiscal Court did not comply with the provisions of KRS Chapter 100, the 2025 Ordinance is an unlawful exercise of the Fiscal Court's authority and is invalid. Accordingly, the 2025 Ordinance is not entitled to priority over the provisions of the Siting Board's Certificate issued in this case.

The primary tenet guiding our construction of a statute is to determine and put into effect the intent of the General Assembly. *Jefferson Cnty. Bd. of Educ. v. Fell*, 391 S.W.3d 713, 718 (Ky. 2012) (citations omitted); *see also* KRS 446.080(1) ("All statutes of this state shall be liberally construed with a view to promote their objects and carry out the intent of the legislature. . . ."). To discern that intent, we begin with "the actual language of the statute." *Fell*, 391 S.W.3d at 720 (citing *Shawnee Telecom Res., Inc. v. Brown*, 354 S.W.3d 542, 551 (Ky. 2011)).

There are several statutes relevant to this case, but we begin with KRS 278.704, subsection (3) which provides that any setback or decommissioning requirement created *by a local planning and zoning commission* has primacy over the requirements establishing setbacks[9] and decommissioning. The Siting Board may not waive nor grant any deviations from those established local requirements. The full text of KRS 278.704(3) is as follows:

> (3) *If* the merchant electric generating facility is proposed to be located in a county or municipality *with planning and zoning*, then decommissioning and setback requirements from a property boundary, residential neighborhood, school, hospital, or nursing home facility *may* be established by the planning and zoning commission. *Any decommissioning requirement or setback established by a planning and zoning commission* for a facility in an area over which it has jurisdiction *shall*:
>
> (a) Have primacy over the decommissioning requirements in KRS 278.706(2)(m) and the setback requirement in subsections (2) and (5) of this section; and
>
> (b) Not be subject to modification or waiver by the board through a request for deviation by the applicant, as provided in subsection (4) of this section or otherwise.

(Emphasis added.)

In the case before us, the circuit court disagreed with Clover Creek's position that the statute restricts a local government – *without* a planning and zoning commission – from enforcing the priority of its setback and

---

[9] KRS 278.704(2).

decommissioning requirements over the state mandates. The court observed that "nowhere does the statute provide that shall be the *exclusive* manner by which local decommissioning or setback requirements may be established." Citing *Commonwealth v. Dulin*, 427 S.W.3d 170, 176 (Ky. 2014), the court concluded "[i]n the absence of such language, the Court may not read it into the statute." In reaching its conclusion, however, the circuit court did just that.

Contrary to the circuit court's opinion and the Fiscal Court's corresponding interpretation proffered on appeal, KRS 278.704(3) does not grant local governments *without* planning commissions the authority to regulate MEGFs outside of and with priority over the Siting Board's review.

The statutory text of KRS 278.704(3) is clear and unambiguous: (1) *if* a proposed MEGF seeks to be sited in a county with a planning and zoning commission and (2) *if* the planning and zoning commission has established setback and decommissioning requirements, *then* those local requirements control. This construction is further supported when read in conjunction with KRS 278.704(1) and (2). *See Fell*, 391 S.W.3d at 719 (citations omitted) ("The particular word, sentence or subsection under review must also be viewed in context rather than in a vacuum; other relevant parts of the legislative act must be considered in determining the legislative intent."). Subsection (1) of KRS 278.704 unequivocally provides that "[n]o person shall commence to construct a merchant

electric generating facility until that person has applied for and obtained a construction certificate for the facility from the board." Accordingly, this state-regulated bottleneck must be cleared by all MEGFs as the first step toward reaching fruition.

Subsection (2) of KRS 278.704 begins with "[e]xcept as provided in subsections (3), (4), and (5)[10] of this section, no construction certificate shall be issued to construct a merchant electric generating facility" and proceeds to recite the established state-level setback requirements.[11] Thus, the statute does in fact carve out the exclusive means by which a local government may regulate MEGFs and those means require the existence of a local planning unit or commission. *See* KRS 278.704(3). Otherwise, the state standards specified in KRS 278.704(2)

---

[10] Subsection (5) addresses the circumstance when a proposed MEGF is located on the site of a former coal processing plant, and as that circumstance is inapplicable to the current case before us, we omit further reference to subsection (5) in our analysis.

[11] The entirety of KRS 278.704(2) states the following: "Except as provided in subsections (3), (4), and (5) of this section, no construction certificate shall be issued to construct a merchant electric generating facility unless the exhaust stack of the proposed facility and any wind turbine is at least one thousand (1,000) feet from the property boundary of any adjoining property owner and all proposed structures or facilities used for generation of electricity are two thousand (2,000) feet from any residential neighborhood, school, hospital, or nursing home facility. For purposes of applications for site compatibility certificates pursuant to KRS 278.216, only the exhaust stack of the proposed facility to be actually used for coal or gas-fired generation or, beginning with applications for site compatibility certificates filed on or after January 1, 2015, the proposed structure or facility to be actually used for solar or wind generation shall be required to be at least one thousand (1,000) feet from the property boundary of any adjoining property owner and all proposed structures or facilities used for generation of electricity are two thousand (2,000) feet from any residential neighborhood, school, hospital, or nursing home facility."

-15-

apply and are subject to the Siting Board's authority to grant a deviation pursuant to KRS 278.704(4).[12] To hold otherwise would permit localities to change the rules and impose conflicting requirements after a permit application has been filed and approved. Indeed, that is exactly what occurred here as the 2025 Ordinance retroactively divested the Siting Board's jurisdiction to grant a certificate on a pending application proceeding.

On its face, KRS 278.704 reveals the legislative intent to consolidate the authority to issue a construction certificate (a prerequisite for an MEGF to commence construction) with the Siting Board. This consolidation of authority, however, does not completely divest local jurisdictions without planning and zoning commissions from *any* input. For instance, consideration is granted to localities when staffing the Siting Board for review of a project's application. When a proposed project is in just one county, the Governor appoints two "ad hoc" members from the county: one member shall be the chairman of the planning commission in the respective jurisdiction, or, *in the absence of a planning commission*, either the county judge executive or the mayor; and the other ad hoc

_____

[12] The text of KRS 278.710(1)(g) and (j) echo this interpretation. That is, when deciding to grant or deny an application for a construction certificate, the Siting Board must consider whether the applicant complied with the state-mandated setbacks *or* requested and received approval for a modification *or* provided proof of compliance with differing setback requirements *established by local planning and zoning commissions*. KRS 278.710(1)(g). The Siting Board must likewise consider "[w]hether the decommissioning plan is complete and complies with the requirements of KRS 278.706(2)(m) *and* any other local requirements that may apply." KRS 278.710(1)(j) (emphasis added).

member shall be a resident of the county where the project will be located. KRS 278.702(1)(d). These ad hoc members serve until the MEGF is constructed and begins generating electricity for sale or until the construction certificate expires. KRS 278.702(2). In addition to local representation on the Siting Board, KRS 278.706 requires that an application include "[e]vidence of public notice"[13] and "[a] statement certifying that the proposed plant will be in compliance with all local ordinances and regulations concerning noise control and with any local planning and zoning ordinances."[14]

Finally, KRS 278.718 provides guidance for construing certain provisions governing MEGFs and states the following in its entirety:

> The provisions of KRS 278.700, 278.704, 278.706, 278.708, and 278.710 shall not supplant, any other state or federal law, including the powers available to local governments under the provisions of home rule under KRS 67.080, 67.083, 67.850, 67.922, 67A.060, 67C.101, and 82.082. An ordinance, permit, or license issued by a local government shall have primacy over the provisions and requirements of KRS 278.700, 278.704, 278.706, and 278.708, and any conflict between an order of the board and a local ordinance, permit, or license shall be resolved in favor of the local government's ordinance, permit, or license.

---

[13] KRS 278.706(2)(c).

[14] KRS 278.706(2)(d).

At the outset of KRS 278.718, the General Assembly stated its intention that the enumerated KRS Chapter 278 statutes "shall not supplant" other federal, state, or local laws, meaning that these provisions are intended to supplement or coexist with other authorities. The statutory text is evidence of the General Assembly's clear understanding that with the siting and development of MEGFs comes the inevitable potential for interaction with a multitude of other laws, regulations, and permits, such as environmental protection acts and building, fire, and plumbing codes to name just a few. To the extent that a local government adopts ordinances concerning setbacks and decommissioning standards "through its planning and zoning authority," KRS 278.718 orders those local requirements to have "primacy" over the corresponding provisions in KRS 278.700, .704, .706, and .708. Additional authority to regulate MEGFs outside of the scope of these statutes, however, is not provided by KRS 278.718.

For the purposes of regulating the development of MEGFs, the General Assembly enacted detailed statutes specifying the minimum setback and decommissioning requirements, subject to limited exceptions. *See* KRS 278.704(2)-(3). Under the facts of this case, the only applicable exceptions to those state standards are setback and decommissioning restrictions *established by the local planning and zoning commission*. KRS 278.704(3). *See Lewis v. Jackson Energy Co-op. Corp.*, 189 S.W.3d 87, 91 (Ky. 2005) (citing *Smith v. Wedding*, 303

S.W.2d 322 (Ky. 1957)) ("It is a primary rule of statutory construction that the enumeration of particular things excludes ideas of something else not mentioned."). To then construe KRS 278.718 to authorize local governments without planning and zoning commissions free reign to impose quintessential land-use restrictions in the limited context of MEGF siting would obliterate the legislative intent expressed in KRS 278.704 and its related statutes. Such a construction further runs counter to a core principle of statutory interpretation, which is that "[s]tatutes should be construed in such a way that they do not become ineffectual or meaningless." *Lewis*, 189 S.W.3d at 91 (citing *Commonwealth v. Phon*, 17 S.W.3d 106, 108 (Ky. 2000)). Instead, KRS 278.718 accounts for the home rule power granted to local governments, such as the Fiscal Court, and remains compatible with the plain language of KRS 278.704, in that KRS 67.083(3)(k) permits fiscal courts to regulate "[p]lanning, zoning, and subdivision control according to the provisions of KRS Chapter 100[.]"

A fiscal court's home rule power is gleaned from KRS 67.080 and KRS 67.083. Such power, however, is not limitless. Under KRS 67.080(3), "[t]he fiscal court shall not exercise executive authority except as specifically assigned by statute." Subsection (1) of KRS 67.083 adheres to this directive by stating its "purpose . . . to provide counties as units of general purpose local government with the necessary latitude and flexibility to provide and finance various governmental

-19-

services within those functional areas specified in subsection (3)[.]" Notably, KRS 67.083(1) concludes by recognizing that "the General Assembly retains full authority to prescribe and limit by statute local governmental activities when it deems such action necessary."

In the case before us, the Fiscal Court concedes that Breckinridge County does not have a planning and zoning commission and that it did not follow the procedures required by KRS Chapter 100 to enact either the 2022 or 2025 Ordinance. This omission is critical to the fate of the ordinances, as the General Assembly preempted the field of local land use regulation with KRS Chapter 100. As stated in *Bellefonte Land, Inc. v. Bellefonte*, "[w]hen the state has preempted a field, the city must follow that scheme or refrain from planning." 864 S.W.2d 315, 317 (Ky. App. 1993) (citing *Creative Displays, Inc. v. City of Florence*, 602 S.W.2d 682 (Ky. 1980)). *See also Sebastian-Voor Props., LLC v. Lexington-Fayette Urb. Cnty. Gov't*, 265 S.W.3d 190, 193 (Ky. 2008) ("[A]ny authorized political subdivision that wants to adopt zoning regulations . . . must comply with Chapter 100."); *Louisville & Jefferson Cnty. Plan. Comm'n v. Schmidt*, 83 S.W.3d 449, 456 (Ky. 2001) ("Zoning changes and variances are only permissible if the proper procedure set forth by the General Assembly is followed. . . . Local authorities have no right to usurp the General Assembly's power and attempts to do so may be declared void.").

The 2022 Ordinance self-identified as a zoning ordinance, despite the Fiscal Court's failure to follow the statutory scheme mandated by KRS Chapter 100. The 2025 Ordinance attempted to evade the mandates of KRS Chapter 100 by nesting its enacting authority under the guise of conservation, KRS 67.083(3)(h), and regulation of commerce, KRS 67.083(3)(n) and by denying it <u>was</u> an ordinance. However, after mere recitation of these home rule statutes, the 2025 Ordinance becomes untethered from its stated aim and seeks to regulate the use of property for the construction of large-scale SES projects by imposing requirements such as setbacks, screening, and site-plan review. KRS 100.203(1); KRS 100.201(2); KRS 100.111(8).

The circuit court found this Court's opinion in *Mr. B's Bar & Lounge, Inc. v. City of Louisville*, 630 S.W.2d 564 (Ky. App. 1981), dispositive in its determination that the 2025 Ordinance was not a zoning ordinance. That reliance, however, is misplaced. In *Mr. B's*, this Court observed that the ordinance at issue concerned the regulation and licensing of adult entertainment businesses, *id.* at 565, and the fact that the ordinance incidentally restricted signage for those businesses did not classify it as a zoning ordinance, *id.* at 567. In particular, the ordinance aimed to reduce "crime and juvenile delinquency" and banned adult entertainment businesses from displaying signs with "lettering, wording, pictorial or representational matter characterized by emphasis on matter relating to sexual

-21-

activities." *Id.* at 567. That ordinance bore no resemblance to the 2022 or 2025

Ordinances which sought to do exactly what KRS Chapter 100 prohibits.

These Ordinances do not attempt to regulate the business activities,

advertisement, or operation of large-scale SES. Instead, they were specifically

tailored to regulate how property is used in the siting and development of such

facilities effectively rendering the State Board's process meaningless. Due to the

Fiscal Court's failure to comply with KRS Chapter 100, we find both the 2022 and

the 2025 Ordinances invalid.[15] Furthermore, the setback and decommissioning

requirements contained in the 2025 Ordinance were not established by a planning

and zoning commission for the exception of KRS 278.704(3) to apply and are not

entitled to receive priority over the state-level setback and decommissioning

standards established in KRS 278.700 *et seq.*

## CONCLUSION

For the reasons stated herein, we REVERSE the Breckinridge Circuit

Court's order declaring the 2025 Ordinance valid and controlling over the

Certificate issued by the Siting Board and REMAND with instructions to grant

---

[15] The circuit court did not address the validity of the 2022 Ordinance in light of its finding that the 2025 Ordinance was not a zoning ordinance for which compliance with KRS Chapter 100 was required. The circuit court stated that the questions concerning the 2022 Ordinance were thus moot and not addressed below. In light of our finding that compliance with Chapter 100 was required and that it is not entitled to primacy over the Siting Board's certificate, we must address the 2022 Ordinance as well, and we find it also invalid.

judgment permitting the Landowners and Clover Creek to proceed with the Project pursuant to the State Certificate.

CALDWELL, JUDGE, CONCURS.

EASTON, JUDGE, CONCURS AND FILES SEPARATE OPINION.

EASTON, JUDGE, CONCURRING: I have only a little to add to the excellent Opinion by Judge Cetrulo with which I agree in every respect on the applicable law. I write separately because Kentuckians can expect continuing encounters between those who advocate for solar power and those who for various reasons are against it. Both sides make arguably valid points. But the issue here is how the law governs in what manner the local community may regulate.

By the provisions of KRS Chapter 100, the General Assembly gave to the people of Breckinridge County the right to engage in planning and zoning by having a commission for that purpose. Perhaps deferring generally to the right of the people to use their own property as they see fit, the people of Breckinridge County (through their local elected officials) did not enact a permissible planning and zoning agency under KRS Chapter 100 for their county. There are benefits of freedom from government regulation which flow from this decision, but it also has consequences, including a loss in the level of local control.

The growing use of land for solar energy production presents a modern and new type of disagreement in the context of land use regulation

between the right of the people to use their land as they choose and the protection of the neighborhood and larger community from any actual harm caused by this type of land use.  But this clash should not be supported solely by the simple argument that community members want to ban this type of use just because it does not fit within their personal, agricultural ideals for how such land should be used.  That works both ways and could result in a loss of freedom in how all agricultural property owners may choose to use their property.

The decision to enact the 2025 Ordinance was a close call.  The bare majority (four members) of the fiscal court voted for it with three members against it.  This split is consistent with the strong feelings many have on this subject at present.  But this case is not about feelings or preferences; it is about the law.

The 2022 Ordinance was clearly a zoning regulation.  The 2025 Ordinance replaced the prior one in the middle of this dispute after state authorities had proceeded as the law dictates to approve Clover Creek's designed use of the property.  The newer ordinance attempted to regulate the same subject matter as the prior one.  To simply say it is not intended to be a zoning ordinance does not make it so.

To paraphrase Shakespeare, "a rose by any other name" can still present thorny issues.  Being familiar with Breckinridge County, I know there are many skilled hunters living there.  I choose a different comparison to consider:  "if

something walks like a duck, acts like a duck and quacks like a duck, it's a duck!"

*Greater Louisville First Federal Sav. and Loan Ass'n v. Etzler*, 659 S.W.2d 209, 212 (Ky. App. 1983).

The 2025 Ordinance is a zoning regulation, just as the 2022 Ordinance admittedly was. It was not enacted by a county which had chosen to have a planning and zoning commission as permitted by KRS Chapter 100. It cannot impede the ability of Clover Creek to proceed as state authorities have determined it may.

BRIEFS FOR APPELLANTS:

Jason P. Renzelmann
Gregory T. Dutton
Kathryn A. Eckert
Jeremy S. Rogers
Clifford H. Ashburner
Louisville, Kentucky

BRIEF FOR APPELLEE:

Carol Schureck Petitt
Connor E. Sturgill
Louisville, Kentucky